# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――――

**ELIZABETH E. NESBITT; ALAN C. BAKER,**

**Plaintiffs-Appellees,**

v.

**U.S. ARMY CORPS OF ENGINEERS; JOHN MCHUGH, Secretary of the Army; THOMAS BOSTICK, Lieutenant General, Commanding General and Chief of Engineers; JOHN S. KEM, Colonel, Northwestern Division Commander; ANDREW D. KELLY, Lieutenant Colonel, Walla Walla District Commander and District Engineer,**

**Defendants-Appellants.**

―――――――――――

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

―――――――――――

## EXCERPTS OF RECORD

―――――――――――

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

WENDY J. OLSON
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
ABBY C. WRIGHT
  (202) 514-0664
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

# INDEX

**Notice of Appeal (Dkt. No. 69)** .................................................................ER1

**District Court Judgment (Dkt. No. 68)**....................................................ER4

**District Court Decision (Dkt. No. 67)**.....................................................ER5

**Statement of Material Facts (Dkt. No. 52-2)** .......................................ER15

**District Court Preliminary Injunction Decision (Dkt. No. 42)**......ER22

**Declaration of Stephen B. Austin (Dkt. No. 18-1)**.............................ER33

**Complaint (Dkt. No. 1)** ..............................................................................ER42

**Docket Sheet** ................................................................................................ER53

JOYCE R. BRANDA
Acting Assistant Attorney General
WENDY J. OLSON, Idaho State Bar No. 7634
United States Attorney
JOANNE P. RODRIGUEZ, Idaho State Bar No. 2996
Assistant United States Attorney
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Telephone: (202) 353-3098
Facsimile: (202) 616-8460
Daniel.Riess@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ELIZABETH E. MORRIS and ALAN C. BAKER,** | **Case No. 3:13-CV-00336-BLW** |
| **Plaintiffs,** | **NOTICE OF APPEAL** |
| **v.** | |
| **U.S. ARMY CORPS OF ENGINEERS, et al.,** | |
| **Defendants.** | |

PLEASE TAKE NOTICE that defendants United States Army Corps of Engineers; John

McHugh, Secretary of the Army; Lieutenant General Thomas Bostick, Commanding General

and Chief of Engineers; Colonel John S. Kem, Northwestern Division Commander; and

Lieutenant Colonel Timothy Vail, Walla Walla District Commander and District Engineer,

hereby appeal to the United States Court of Appeals for the Ninth Circuit from the Court's

Memorandum Decision and Judgment entered October 13, 2014 [ECF Nos. 67, 68].

    Dated: December 10, 2014              Respectfully submitted,


JOYCE R. BRANDA
Acting Assistant Attorney General

WENDY J. OLSON
United States Attorney

JOANNE P. RODRIGUEZ
Assistant United States Attorney


   /s/ Daniel Riess                  
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 10th day of December 2014, I filed the foregoing Notice of Appeal electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Steven J. Lechner, Attorney for Plaintiffs
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
lechner@mountainstateslegal.com

John L. Runft, Attorney for Plaintiffs
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
jrunft@runftsteele.com


 /s/ Daniel Riess
Daniel Riess, Attorney for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

ELIZABETH E. MORRIS; and
ALAN C. BAKER,

Plaintiffs,

v.

U.S. ARMY CORPS OF
ENGINEERS, *et al.*,

Defendants.

Case No. 3:13-CV-00336-BLW

**JUDGMENT**

In accordance with the Memorandum Decision filed with this Judgment,

NOW THEREFORE IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED, that the plaintiffs' motion for summary judgment (docket no. 54) is

GRANTED and the defendants' motion for summary judgment (docket no. 52) is

DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that 36 C.F.R. §

327.13 violates the Second Amendment and is declared unconstitutional.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that defendants

are enjoined from enforcing 36 C.F.R. § 327.13 on any Corps' property in Idaho.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Clerk close

this case.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER, | |
| Plaintiffs, | Case No. 3:13-CV-00336-BLW |
| v. | **MEMORANDUM DECISION** |
| U.S. ARMY CORPS OF ENGINEERS, *et al*., | |
| Defendants. | |

## INTRODUCTION

The Court has before it cross-motions for summary judgment.  The Court heard

oral argument on August 27, 2014, and took the motions under advisement.  After further

review, the Court has decided, for reasons set forth below, to grant the plaintiffs' motion

and deny the Corps' motion.

## LITIGATION BACKGROUND

Plaintiffs challenge regulations promulgated by the Army Corp of Engineers that

govern the possession of firearms on property administered by the Corps.  Plaintiffs argue

that the regulations violate their Second Amendment right to keep and bear arms.

The regulations govern over 700 dams – holding back more than 100 trillion

gallons of water – built by the Corps, and the surrounding recreation areas that serve over

300 million visitors annually.  Adopted in 1973, the regulations were intended to provide

for more effective management of the lake and reservoir projects.  The regulation at issue

here reads as follows:

**Memorandum Decision -- 1**

(a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:
   (1) In the possession of a Federal, state or local law enforcement officer;
   (2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;
   (3) Being used at authorized shooting ranges; or
   (4) Written permission has been received from the District Commander.
(b) Possession of explosives or explosive devices of any kind, including fireworks or other pyrotechnics, is prohibited unless written permission has been received from the District Commander.

36 C.F.R. § 327.13.  The plaintiffs' complaint alleges that this regulation violates the Second Amendment by (1) banning the possession of firearms in a tent, and (2) banning the carrying of firearms on Corps' recreation sites.  The plaintiffs live in western Idaho, recreate on Corps-administered public lands where this regulation applies, and would possess a functional firearm at those recreation sites but for the Corps' active enforcement of this regulation.

Both sides seek summary judgment.  To resolve this dispute, the Court will first identify the legal standards governing the Second Amendment and then evaluate the Corps' regulation under those standards.

## LEGAL STANDARDS

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  *U.S. Const. amend. II.*  To determine if the Corps' regulation violates the Second Amendment, the Court must examine first "whether the challenged law burdens conduct protected by the Second Amendment."  *U.S. v. Chovan*, 735 F.3d 1127, 1136

**Memorandum Decision -- 2**

(9th Cir. 2013).  The second step is to "apply an appropriate level of scrutiny."  *Id.*  The "appropriate level" depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right."  *Id.* at 1138 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 705 (7th Cir.2011)).  A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny.  *Fyock v. City of Sunnyvale,* 2014 WL 984162 (N.D.Cal. Mar. 5, 2014).

However, this sliding scale analysis is not used when instead of merely burdening the right to bear arms, the law "destroys the right."  *Peruta v. County of San Diego,* 742 F.3d 1144, 1168 (9th Cir. 2014).  In that case, the law is unconstitutional "under any light."  *Id.*  "It is a rare law that 'destroys the right' requiring *Heller*-style per se invalidation."  *Id.* at 1170.  That type of "rare law" was at issue in *Peruta.*  There, a firearm registration scheme in San Diego County effectively banned the open and concealed carry of handguns for law-abiding citizens.  *Id.* at 1175.  The Circuit held that while a State may be able to ban the open *or* concealed carry of firearms, it may not ban *both. Id.* at 1172 (holding that "the Second Amendment does require that the states permit some form of carry for self-defense outside the home").  Because the San Diego County law effectively "destroyed" a law-abiding citizen's Second Amendment right to carry a handgun for self-defense, the Circuit did not apply any level of scrutiny but simply declared the law unconstitutional.  *Id.* at 1175.

## ANALYSIS

The Court must ask first whether the Corps' regulation burdens conduct protected by the Second Amendment. It does. The Second Amendment protects the right to carry a firearm for self-defense purposes. *Heller,* 554 U.S. at 628 (stating that "the inherent right of self-defense has been central to the Second Amendment right"). That right extends outside the home. *Peruta,* 742 F.3d at 1166 (holding that "the right to bear arms includes the right to carry an operable firearm outside the home for the lawful purpose of self-defense").

The Corps' regulation bans carrying a loaded firearm for the purpose of self-defense. It also bans carrying an unloaded firearm along with its ammunition. At most, it would allow a person to carry an unloaded firearm so long as he was not also carrying its ammunition. An unloaded firearm is useless for self-defense purposes without its ammunition. While those who use firearms for hunting are allowed greater latitude, the regulation grants no such exemption to those carrying firearms solely for purposes of self-defense. Consequently, the regulation does impose a burden on plaintiffs' Second Amendment rights.

Under *Peruta,* this complete ban goes beyond merely burdening Second Amendment rights but "destroys" those rights for law-abiding citizens carrying operable firearms for the lawful purpose of self-defense. Accordingly, the Corps' regulation is unconstitutional "under any light" – that is, it is invalid no matter what degree of scrutiny is used in its evaluation. *Id.* at 1168-70.

The Corps certainly retains the right to regulate handguns on its property; the Second Amendment right is "not unlimited." *Heller,* 554 U.S. at 595. It is "not a right to

keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.  The Ninth Circuit confirms this in *Peruta:*

> We conclude by emphasizing, as nearly every authority on the Second Amendment has recognized, regulation of the right to bear arms is not only legitimate but quite appropriate.  We repeat *Heller's* admonition that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession"—or carriage—"of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller,* 554 U.S. at 626–27. Nor should anything in this opinion be taken to cast doubt on the validity of measures designed to make the carrying of firearms for self-defense as safe as possible, both to the carrier and the community.  We are well aware that, in the judgment of many governments, the safest sort of firearm-carrying regime is one which restricts the privilege to law enforcement with only narrow exceptions. Nonetheless, "the enshrinement of constitutional rights necessarily takes certain policy choices off the table . . . . Undoubtedly some think that the Second Amendment is outmoded in a society where our standing army is the pride of our Nation, where well-trained police forces provide personal security, and where gun violence is a serious problem. That is perhaps debatable, but what is not debatable is that it is not the role of this Court [or ours] to pronounce the Second Amendment extinct." *Id.* at 636.  Nor may we relegate the bearing of arms to a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." *McDonald,* 130 S.Ct. at 3044.

*Peruta,* 742 F.3d at 1178.  This language confirms the right of the Corps to regulate handguns on its property.  But here the Corps is attempting to ban handguns, not regulate them.  The Corps justifies the ban by arguing that its parks are a "sensitive place," a phrase used by *Peruta,* quoting *Heller,* in the excerpt above.  But those cases limited the "sensitive place" analysis to facilities like "schools and government buildings."  In contrast, the ban imposed by the Corps applies to outdoor parks.

**Memorandum Decision -- 5**

The Corps argues that it is entitled to be more restrictive because it is a governmental entity acting as a proprietor managing its own property.  In support, the Corps cites *Nordyke v King*, 681 F.3d 1041 (9th Cir. 2012) (en banc), a case upholding a firearms ban on the ground that the governmental entity was acting as a proprietor to manage its property.  In *Nordyke,* the plaintiffs challenged an Alameda County law making it a misdemeanor to possess a firearm on County property.  The ban in that case was just as broad as that faced two years later in *Peruta* – neither law allows a law-abiding citizen to carry a gun for self-defense purposes – but *Nordyke* comes to the opposite result and upholds the ban.

How can the two cases be reconciled?  Quite easily, as it turns out.  The plaintiffs in *Nordyke* only challenged the Alameda County law as an effective ban on gun shows on County property because no seller could display firearms without running the risk of committing a misdemeanor.  Importantly, the plaintiffs did not allege that they wanted to carry guns on county property for the purpose of defending themselves.[1]  Having to confront only that aspect of the law that burdened gun shows rather than the core Second Amendment right of self-defense, the Circuit held that the law passed muster because Alameda County was entitled to impose restrictions on gun shows on County property in

---

[1] The allegations of the parties in *Nordyke* were made clear in the three-judge panel opinion that was withdrawn when the case was taken en banc.  *Nordyke v. King,* 644 F.3d 776, 786 (noting that plaintiffs "complain that they cannot display and sell guns on county property; they do not allege that they wish to carry guns on county property for the purpose of defending themselves while on that property"), *withdrawn by,* 664 F.3d 774 (9th Cir. 2011). The Court is not citing the three-judge panel opinion for its precedential value but merely reciting its factual account of the pleadings.

**Memorandum Decision -- 6**

its role as proprietor of its property.  Moreover, despite the strict language of the law, the County had interpreted the law to loosen its restriction and allow the display of firearms.

In contrast, the plaintiffs in the present case do allege that their core right of self-defense is infringed, and the Corps has not interpreted its regulation to impose something less than its language conveys.  Thus, *Nordyke* offers little guidance here.

The Court recognizes that a District Court in the Eleventh Circuit has evaluated the same Corps' regulation and concluded, in resolving a motion for preliminary injunction, that it is unlikely the plaintiffs' challenge will succeed.  *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,* 2014 WL 4059375 (N.D.Ga. Aug. 18, 2014).  That decision relied on *Nordyke* in applying an intermediate level of scrutiny and finding that the regulation passed muster.  This Court, however, is bound by *Peruta*, as discussed above, and finds *Nordyke* distinguishable.  Thus, the Court declines to follow the analysis of *GeorgiaCarry.Org*.

The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated.  The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats.

The Corps manages 422 projects in 42 states, including 702 dams and over 14,000 miles of levees.  *See Statement of Facts (Dkt. No. 52-2)* at ¶¶  1, 9.  These dams and related structures have been deemed as "critical infrastructure" by the U.S. Department of Homeland Security's Office of Inspector General on that ground that a catastrophic

**Memorandum Decision -- 7**

failure could affect populations exceeding 100,000 and have economic consequences surpassing $10 billion.  *Id.* at ¶ 10.

The Corps undoubtedly has a substantial interest in "providing the public with safe and healthful recreational opportunities while protecting and enhancing [its] resources." 36 C.F.R. § 327.1.  About 90% of the lakes that support Corps' projects are located near metropolitan areas.  *Id.* at ¶ 2.  It follows that most of these facilities have a "high density of use."  *Id.* at ¶ 4.  This density leads to conflicts caused by alcohol consumption, overcrowded facilities, visitors' preference for different types of music played at different sound levels, and the relative loudness of visitors' conversations.  *Id.* at ¶ 18.  Based on surveys conducted some twenty years ago, Corps Park Rangers often found themselves in dangerous situations, and were assaulted by visitors once every six days.  *Id.* at ¶¶ 21-26. The Corps has concluded that "the presence of a loaded firearm could far more quickly escalate such tension between visitors from a minor disagreement to a significant threat to public safety involving the potential use of deadly force by a visitor against another visitor or unarmed Corps Park Ranger."  *See Austin Declaration (Dkt. No. 18-1)* at ¶ 5c. The danger to Corps Park Rangers is especially acute because Congress has not authorized them to carry firearms.  *Id.* at ¶ 28.

The Corps cites these considerations to support the ban imposed by its regulation. But *Peruta* and *Heller* rejected that line of argument:  "We are well aware that, in the judgment of many governments, the safest sort of firearm-carrying regime is one which restricts the privilege to law enforcement with only narrow exceptions.  Nonetheless, the

**Memorandum Decision -- 8**

enshrinement of constitutional rights necessarily takes certain policy choices off the table . . . ." *Peruta*, 742 F.3d at 1178.

<u>Conclusion</u>

The regulation banning the use of handguns on Corps' property by law-abiding citizens for self-defense purposes violates the Second Amendment.  While the Corps retains the right to regulate the possession and carrying of handguns on Corps property, this regulation imposes an outright ban, and is therefore unconstitutional under any level of scrutiny, as set forth in *Heller* and *Peruta.*  The Court recognizes that this result conflicts with *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,* 2014 WL 4059375 (N.D.Ga. Aug. 18, 2014), but the Court's decision is dictated by the law of the Ninth Circuit, namely *Peruta.*

For all of the reasons cited above, the Court will grant plaintiffs' motion for summary judgment and deny the Corps' motion.  The plaintiffs are therefore entitled to a declaratory judgment that 36 C.F.R. § 327.13 violates the Second Amendment, and an injunction enjoining its enforcement in Idaho.  The injunction is limited to Idaho because its scope is dictated by the allegations of the two named plaintiffs – Elizabeth Morris and Alan Baker.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that "[t]he district court abused its discretion in enjoining the rules themselves as opposed to enjoining their enforcement as to the plaintiffs before him").  Morris and Baker allege that they use Corps' campgrounds in Idaho, *see Declarations of Morris and Baker (Dkt. Nos. 9 & 10),* and so the Court's injunction will be limited to enjoining enforcement on Corps' property in Idaho.  *See Meinhold v. U.S. Dept. of Defense,* 34 F.3d 1469 (9th Cir.

**Memorandum Decision -- 9**

1994) (holding that court could not impose nationwide injunction against application of unconstitutional federal regulation where plaintiffs had not been certified as a class).

The Court will enter a separate Judgment setting forth these rulings as required by Rule 58(a).

DATED: October 13, 2014

B. Lynn Winmill
Chief Judge
United States District Court

STUART F. DELERY
Assistant Attorney General
WENDY J. OLSON, Idaho State Bar No. 7634
United States Attorney
JOANNE P. RODRIGUEZ, Idaho State Bar No. 2996
Assistant United States Attorney
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Telephone: (202) 353-3098
Facsimile: (202) 616-8460
Daniel.Riess@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **ELIZABETH E. MORRIS and ALAN C. BAKER,** | **Case No. 3:13-CV-00336-BLW** |
| **Plaintiffs,** | **DEFENDANTS' STATEMENT OF MATERIAL FACTS** |
| **v.** | |
| **U.S. ARMY CORPS OF ENGINEERS, et al.,** | |
| **Defendants.** | |

      Pursuant to Local Civil Rule 7.1(b)(1), Defendants submit this statement of material facts in support of their motion for summary judgment.

      1.      The U.S. Army Corps of Engineers ("Corps") manages 422 projects (mostly lakes) in 42 states and is the steward of 12 million acres of land and water used for recreation, with

54,879 miles of shoreline.  Administrative Record ("AR") at 0000727, 0001009, 0001633; U.S. Army Corps of Engineers, Information Paper, Subject: Civil Works Program Statistics (March 20, 2012) ("Information Paper") [ECF No. 18-2].

2.      More than 90% of the lakes that support Corps-managed projects are located near metropolitan areas.  Information Paper.

3.      Roughly 80% of Corps recreation areas are located within 50 miles of an urban area.  AR at 0001517; Congressional Research Service, Firearms at Army Corps Water Resources: Proposed Legislation and Issues for Congress (July 12, 2012) ("CRS Report") [ECF No. 18-3].

4.      In general, Corps-managed recreational facilities have a high density of use because many such facilities are located near major population centers.  Declaration of Stephen B. Austin ¶ 5.c ("Austin Decl.") [ECF No. 18-1].

5.      Corps-managed projects receive 370 million visits per year, making its projects the most visited of any single federal agency's sites.  AR at 0001009, 0001633; Information Paper.

6.      Ten percent of the U.S. population visits a Corps-managed project at least once a year.  Information Paper.

7.      The Corps hosts 20% of all visits to federal recreation areas on just 2% of the federal land base.  Id.

8.      Corps-managed projects open to the public for recreation include projects containing important infrastructure such as dams and levees.  Id.

9.      The Corps owns and operates 702 dams and 227 navigational locks, and has built or controls 14,501 miles of levees.  Id.

10.     The U.S. Department of Homeland Security's Office of Inspector General has characterized "[d]ams and related structures," including those operated and managed by the Corps, as "critical infrastructure," given that "one catastrophic failure at some locations could affect populations exceeding 100,000 and have economic consequences surpassing $10 billion." U.S. Department of Homeland Security, Office of Inspector General, DHS Risk Assessment Efforts in the Dams Sector (2011), at 1, 2, *available at* http://www.oig.dhs.gov/assets/Mgmt/ OIG_11-110_Sep11.pdf.

11.     The Corps and the U.S. Department of Homeland Security regard some Corps infrastructure as critical to homeland security and the economy; these structures include multi-purpose dams and major navigation locks.  CRS Report at 3.

12.     According to the Congressional Research Service, many of these Corps-managed facilities require additional protection measures in times of heightened homeland security concerns.  Id.

13.      Public safety on Corps-managed lands is of paramount importance to the Corps, and is the basis for policies, rules, and regulations regarding visitor behavior at Corps projects. AR at 0000613.

14.     The Corps must consider a number of factors when deciding whether the public interest is furthered by opening Corps-managed lands for recreation, and when developing rules for their recreational use.  Austin Decl. ¶ 5.a.

15.     Developing rules regarding the possession of firearms on Corps-managed lands has required a delicate balancing of several of these factors, including the safety of visitors and of Corps employees; protection of natural, cultural, and developed resources; and promotion of

recreational opportunities.  Id.

16.     The Corps has considered how to structure its firearms rules to ensure the safety of visitors to the lands it manages.  Id. ¶ 5.c.

17.     The Corps has considered potential sources of conflict among visitors and has enacted rules aimed at minimizing any such conflict.  Id.

18.     Some sources of conflict among visitors to Corps-managed lands include alcohol consumption, overcrowded facilities, visitors' preference for different types of music played at different sound levels, and the relative loudness of visitors' conversations.  Id.; see also AR at 0000556 – 0000559, 0000650, 0000652.

19.     Conflicts among visitors to Corps-managed lands are often more acute at Corps-managed recreational areas, as contrasted with U.S. National Park Service recreational areas, because of the higher concentration of visitors on Corps lands.  Id.

20.     Corps regulations are aimed at ensuring that inevitable conflicts that arise as a result of disagreements about how different visitors make use of Corps recreational areas are resolved as quickly and peacefully as possible.  Id.

21.     In a 1996 survey, 62% of Corps Park Rangers reported incidents of verbal abuse from one or more visitors to Corps-managed lands, and 46% reported that they had been physically threatened by one or more visitors.  AR at 0000558.

22.     In a 1996 survey, 53% of Corps Park Rangers reported that they had witnessed between one and ten incidents in which one or more visitors to Corps-managed lands had verbally or physically threatened another visitor or visitors.  Id.

23.     In a 1995 survey, Corps Park Rangers reported that each day, on average, one

Ranger was physically threatened by one or more visitors to Corps-managed lands, and nearly four

Rangers were verbally abused or verbally assaulted by one or more visitors.  AR at 0000675.

24.     In a 1995 survey, Corps Park Rangers reported that, on average, a Corps Park

Ranger was assaulted by one or more visitors to Corps-managed lands once every six days.  Id.

25.     In a 1995 survey, the number of reported incidents of threats made by visitors to

Corps-managed lands against Corps Park Rangers greatly exceeded the number of reported

incidents of threats against U.S. National Park Service officers.  Id.

26.     A 1994 study reported that Corps Park Rangers sometimes found themselves in

potentially unsafe and dangerous situations, and that typically, such unsafe situations include those

involving alcohol and drug use on project lands, the use of weapons by the visiting public,

domestic violence, and patrols in remote areas with little or no back-up from other law

enforcement agencies.   AR at 0001090.

27.     The Corps has concluded that the presence of a loaded firearm could far more

quickly escalate tensions resulting from disagreements among visitors to Corps-managed lands

and could present a significant threat to public safety, involving the potential use of deadly force

against another visitor or a Corps Park Ranger.  Austin Decl. ¶ 5.c.

28.     Corps Park Rangers are neither equipped nor trained to function as law

enforcement officers because Congress has not authorized Corps employees to carry firearms, to

execute search warrants, or to enforce any federal laws except for issuing citations for violations of

regulations governing Corps-managed lands.  AR at 0000491, 0001009.

29.     The Corps has determined that allowing armed visitors on Corps-managed lands

could create a chilling effect on the enforcement of Corps regulations, because Congress has not

authorized Corps Park Rangers to be armed.  Austin Decl. ¶ 5.e.

30.    The Corps firearms regulation is premised on the Corps' determination that the
public interest is furthered by restricting the possession of loaded firearms on lands the Corps
manages, unless the firearms are being used for hunting or target shooting, or being carried by a
law enforcement officer or a visitor who has received permission from the District Commander.
Austin Decl. ¶ 5.f.

31.    Owners of private businesses in Idaho, including campgrounds and open
recreational areas, may choose not to permit the carrying of firearms on their property.  Office of
the Attorney General, State of Idaho, Concealed Weapons License FAQs, No. 16, *available at*
http://www.ag.idaho.gov/concealedWeapons/concealedWeapons_index.html.

Dated: May 19, 2014

Respectfully submitted,


STUART F. DELERY
Assistant Attorney General

WENDY J. OLSON
United States Attorney

JOANNE P. RODRIGUEZ
Assistant United States Attorney


    /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098

Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER, <br><br>             Plaintiffs, <br><br>    v. <br><br> U.S. ARMY CORPS OF ENGINEERS, *et al.*, <br><br>             Defendants. | Case No. 3:13-CV-00336-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for preliminary injunction filed by plaintiffs and a motion to dismiss filed by the defendants.  The Court heard oral argument on January 7, 2014, and took the motions under advisement.  After further review, the Court has decided, for reasons set forth below, to deny the motion to dismiss and grant the motion for preliminary injunction.

## LITIGATION BACKGROUND

Plaintiffs challenge regulations promulgated by the Army Corp of Engineers.  The regulations govern the possession of firearms on property administered by the Corps.  Plaintiffs argue that the regulations violate their Second Amendment right to keep and bear arms.

The regulations govern over 700 dams – holding back more than 100 trillion gallons of water – built by the Corps, and the surrounding recreation areas that serve over

**Memorandum Decision & Order -- 1**

300 million visitors annually.  Adopted in 1973, the regulations were intended to provide

for more effective management of the lake and reservoir projects.  The regulation at issue

here reads as follows:

> (a) The possession of loaded firearms, ammunition, loaded projectile firing
> devices, bows and arrows, crossbows, or other weapons is prohibited
> unless:
>   (1) In the possession of a Federal, state or local law enforcement officer;
>   (2) Being used for hunting or fishing as permitted under § 327.8, with
> devices being unloaded when transported to, from or between hunting and
> fishing sites;
>   (3) Being used at authorized shooting ranges; or
>   (4) Written permission has been received from the District Commander.
> (b) Possession of explosives or explosive devices of any kind, including
> fireworks or other pyrotechnics, is prohibited unless written permission has
> been received from the District Commander.

36 C.F.R. § 327.13.  The plaintiffs' complaint alleges that this regulation violates the

Second Amendment by (1) banning the possession of firearms in a tent, and (2) banning

the carrying of firearms on Corps' recreation sites.  The plaintiffs live in western Idaho,

recreate on Corps-administered public lands where this regulation applies, and would

possess a functional firearm at those recreation sites but for the Corps' active

enforcement of this regulation.[1]

　　　The Court will take up first the Corps' motion to dismiss, and specifically the

Corps' argument that the plaintiffs have no Second Amendment rights as a matter of law.

## ANALYSIS

## <u>Corps' Motion to Dismiss</u>

---

[1] These allegations establish that the plaintiffs have standing and that the case is not moot.  The
Court therefore refuses to dismiss the case at this time on standing or mootness grounds.

The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated.  The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats.  The Corps distinguishes its sites from those of other agencies like the Forest Service that are required by law to manage for multiple use, including the use by the public for recreation. In contrast, there is no law requiring the Corps to operate recreation sites, and that gives the Corps more leeway to restrict the public under the Second Amendment, the agency argues.  For these reasons, the Corps seeks to dismiss the case on the ground that its regulation does not violate the Second Amendment as a matter of law.

To evaluate this argument, the Court will employ the two-step analysis set out in *U.S. v. Chovan,* 735 F.3d 1127 (9th Cir. 2013).  The Court must determine first "whether the challenged law burdens conduct protected by the Second Amendment."  *Id.* at 1136. The second step is to "apply an appropriate level of scrutiny."  *Id.*

The "appropriate level" depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right." *Id.* at 1138 (quoting *Ezell v. City of Chicago,* 651 F.3d 684, 705 (7th Cir.2011)).  A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny.  *Silvester v Harris,* 2013 WL 6415670 (E.D.Cal. Dec. 9, 2013).

**Memorandum Decision & Order -- 3**

**ER24**

The Court must ask first whether the Corps' regulation burdens conduct protected by the Second Amendment.  It does.  The Second Amendment protects the right to carry a firearm for self-defense purposes.  *Heller,* 554 U.S. at 628 (stating that "the inherent right of self-defense has been central to the Second Amendment right").  The regulation bans carrying a loaded firearm for the purpose of self-defense.  It also bans carrying an unloaded firearm along with its ammunition.  At most, it would allow a person to carry an unloaded firearm so long as he was not also carrying its ammunition.  An unloaded firearm is useless for self-defense purposes without its ammunition.  While those who use firearms for hunting are allowed greater latitude, the regulation grants no such exemption to those carrying firearms solely for purposes of self-defense.  Consequently, the regulation does impose a burden on plaintiffs' Second Amendment rights.

The second step is to apply the appropriate level of scrutiny.  That inquiry turns on how close the regulation cuts to the core of the Second Amendment and how severe the burden is on that right.

No court has identified those core rights comprehensively.  But one core right was described by the Supreme Court:  The right of a law-abiding individual to possess a handgun in his home for self-defense.  *District of Columbia v. Heller*, 554 U.S. 570 (2008).  In addressing the need for self-defense in the home, the Supreme Court held that the home is "where the need for defense of self, family, and property is most acute."  *Id.* at 628.

The same analysis applies to a tent.  While often temporary, a tent is more importantly a place – just like a home – where a person withdraws from public view, and

**Memorandum Decision & Order -- 4**

seeks privacy and security for himself and perhaps also for his family and/or his property. Indeed, a typical home at the time the Second Amendment was passed was cramped and drafty with a dirt floor – more akin to a large tent than a modern home. Americans in 1791 – the year the Second Amendment was ratified – were probably more apt to see a tent as a home than we are today. *Heller,* 554 U.S. at 605 (holding that "public understanding" at time of ratification is "critical tool of constitutional interpretation"). Moreover, under Fourth Amendment analysis, "tents are protected . . . like a more permanent structure," and are deemed to be "more like a house than a car." *U.S. v. Gooch,* 6 F.3d 673 (9th Cir. 1993). The privacy concerns of the Fourth Amendment carry over well into the Second Amendment's security concerns.

The regulation at issue would ban firearms and ammunition in a tent on the Corps' sites. This ban poses a substantial burden on a core Second Amendment right and is therefore subject to strict scrutiny.

The plaintiffs also challenge the ban on their right to carry firearms outside their tents for self-defense purposes. As the Court discussed above, the regulation prohibits carrying firearms for self-defense purposes despite *Heller's* recognition that "the inherent right of self-defense has been central to the Second Amendment right." *Heller,* 554 U.S. at 628. In interpreting the phrase "bear arms" in the Second Amendment, the *Heller* majority held that "[w]hen used with 'arms,' . . . the term ["bear"] has a meaning that refers to carrying for a particular purpose – confrontation." *Heller,* 554 U.S. at 584. "Heller does not simply reaffirm the traditional right to act in self-defense when threatened. Rather, it recognizes a right to have and carry guns in case the need for such

**Memorandum Decision & Order -- 5**

an action should arise."  Blocher, *The Right Not To Keep or Bear Arms,* 64 Stanford L. Rev. 1, 16 (2012).

The right of self-defense is not, however, unlimited.  *Heller* stated that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ."  *Heller*, 554 U.S. at 626-27.  "[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."  *U.S. v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011).

Still, a solid line of cases decided after *Heller* examines a regulation's impact on self-defense even when the conduct governed is a public venue outside the home.  For example, *Masciandaro* upheld a regulation that banned loaded firearms in a National Park because the regulation contained an exception that struck a balance between public safety and self-defense.  *Id.* at 474 (holding that the regulation "leaves largely intact the right to possess and carry weapons in case of confrontation").

The opposite result was reached in *Moore v. Madigan,* 702 F.3d 933, 936 (7th Cir. 2012) (Posner, J.).  The Seventh Circuit examined an Illinois regulation with a reach similar to the regulation at issue here – it banned carrying even unloaded firearms if ammunition was accessible.  *Id.* at 934.  Judge Posner, writing the majority opinion, described the Illinois law as "the most restrictive gun law of any of the 50 states," and held that it violated the Second Amendment because it "flat[ly] ban[ned] . . . carrying ready-to-use guns outside the home" with no self-defense exception.  *Id.* at 940–41.

**Memorandum Decision & Order -- 6**

The ban imposed by the Corps places this case closer to *Moore* than *Masciandaro.* The Corps' regulation contains a flat ban on carrying a firearm for self-defense purposes. By completely ignoring the right of self-defense, the regulation cannot be saved by the line of cases, like *Masciandaro,* that upheld gun restrictions accommodating the right of self-defense.  *See also, U.S. v Parker*, 919 F.Supp.2d 1072 (E.D.Cal. Jan 22 2013) (upholding concealed weapon regulation in Yosemite Park that allowed for self-defense); *Nichols v Brown,* 2013 WL 3368922 (C.D.Cal. July 3 2013) (upholding California gun control laws that allowed for self-defense).

While the ban on carrying firearms for self-defense may impose a burden on this core right of the Second Amendment severe enough to call for strict scrutiny, it is unnecessary for the Court to decide that issue because the regulation fails to pass muster even if intermediate scrutiny is applied.  The intermediate scrutiny standard requires: (1) that the government's stated objective must be significant, substantial, or important, and (2) that there is a reasonable fit between the challenged regulation and the government's asserted objective.  *Chovan,* 735 F.3d at 1138.  For there to be a "reasonable fit," the regulation must not be substantially broader than necessary to achieve the government's interest.  *Id.*

Here, the regulation is designed to protect both critical infrastructure and the public.  If the regulation ended there, it would satisfy the "reasonable fit" test.  But it extends to ban firearms entirely from being carried for self-defense.  It is simply too broad.  Drafted long before *Heller,* it violates the Supreme Court's description of Second Amendment rights in that case.  This regulation needs to be brought up to date.

**Memorandum Decision & Order -- 7**

The Corps argues that the impact of its regulation is felt only on federal land that it administers, and that it is entitled to have the regulation evaluated under a rational basis test.  The Corps cites *Nordyke v King*, 681 F.3d 1041 (9th Cir. 2012) where the Circuit upheld a county law regulating firearms at commercial gun sales on county property.  In making that ruling, the Circuit cited *U.S. v. Kokinda,* 497 U.S. 720, 725 (1990) for the proposition that there is a distinction between governmental exercise of the "power to regulate or license, as law-maker" and governmental actions taken in its role "as proprietor, to manage its internal operations."

But *Nordyke* never discussed the right of self-defense, and cannot be used to justify the use of a rational basis test here.  The cases cited above where self-defense was discussed – *Masciandaro*, *Moore, Parker,* and *Nichols* – all applied more than a rational basis test to evaluate the laws under scrutiny.  The Court finds that line of authority persuasive.

The Corps argues that it should be treated differently than other agencies because unlike them, the Corps is not statutorily required to open its sites to the public.  But the Corps cites no case exempting the Government from constitutional requirements whenever it acts voluntarily. The Court can find no reason to adopt such a rule.

For all these reasons, the Court will deny the Corps' motion to dismiss.

**Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs seek to enjoin the Corps from enforcing its ban on law-abiding citizens possessing functional firearms on Corps-administered public lands for the purpose of self-defense.  The Corps responds that plaintiffs are seeking a mandatory injunction that

**Memorandum Decision & Order -- 8**

is more difficult to obtain than a standard injunction.  "A mandatory injunction orders a responsible party to take action," and therefore "goes well beyond simply maintaining the status quo."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir.2009).  Accordingly, mandatory injunctions are "particularly disfavored." *Id.*

Plaintiffs are not, however, seeking a mandatory injunction – they are not asking the Corps to take affirmative action but are asking instead that a regulatory ban not be enforced.  While this would require the Corps to change its practices, that type of change does not convert the injunction into a mandatory injunction.  In the leading case of *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), the injunction required the Navy to stop using sonar in its training exercises – in other words, it caused the Navy to change its practices – but the Supreme Court evaluated the injunction under the standard test.  This case presents the same type of prohibitory injunction, and the Court will therefore not apply the stricter test applicable to mandatory injunctions.

To be entitled to injunctive relief under that standard test, plaintiffs must show each of the following:  (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011).  If requirements (2) and (4) are satisfied, and the balance of hardships "tips sharply in the plaintiffs' favor," the plaintiff need only raise "serious questions going to the merits" to be entitled to injunctive relief.

**Memorandum Decision & Order -- 9**

*Id.* at 1134-35 (holding that this aspect of the Ninth Circuit's sliding scale test survived *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)).

From the discussion above concerning the motion to dismiss, it is apparent that plaintiffs have shown a very strong likelihood of success on the merits.  Moreover, irreparable harm is likely because the plaintiffs have made out a colorable claim that their Second Amendment rights have been threatened.  *See Sanders County Republican Cent. Committee v. Bullock,* 698 F.3d 741, 744 (9th Cir. 2012) (holding that colorable claim of constitutional violation satisfies irreparable harm element).  This threat tips the balance of equities in favor of plaintiffs because the harms complained of by the Corps could be "addressed by a more closely tailored regulatory measure[]."  *Ezell,* 651 F.3d at 710.  For the same reasons, an injunction would be in the public interest.

Accordingly, the Court will grant the injunction requested by plaintiffs enjoining the Corps from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense.[2]

## Conclusion

This is a preliminary injunction, and hence the Court's decision here is preliminary in nature.  The Corps remains entitled to an evidentiary hearing or trial to establish a factual record before the Court reaches any final resolution.  To move toward

---

[2]  The Court waives the bond requirement under Rule 65(c).  *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999).

**Memorandum Decision & Order -- 10**

that point, counsel are directed to contact the Court's Clerk to set up a status conference to determine how the case should proceed from here.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 30) is DENIED.

IT IS FURTHER ORDERED, that the motion for preliminary injunction (docket no. 4) is GRANTED.  The Corps is enjoined from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense.  This preliminary injunction shall remain in force until further notice of the Court.

IT IS FURTHER ORDERED, that counsel shall contact the Court's Clerk (jamie_gearhart@id.uscourts.gov) to set up a telephone status conference to determine how this case should proceed.

DATED: January 10, 2014

B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order -- 11**

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
**JOANNE P. RODRIGUEZ, IDAHO STATE BAR NO. 2996**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Joanne.Rodriguez@usdoj.gov

     Attorneys for Defendant


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER,<br><br>Plaintiffs,<br><br>    v.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br><br>Defendants. | Case No. 3:13-CV-00336-BLW<br><br>**DECLARATION OF STEPHEN B. AUSTIN** |

**Declaration of Stephen B. Austin**

     I, Stephen B. Austin, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

     1.     I have been employed as a Park Ranger/Outdoor Recreation Planner/Natural Resources Manager by the U.S. Army Corps of Engineers (Corps) for 36 years.   I received my Bachelor of Science degree in Forest Management from Washington State University in 1975 and completed some graduate level course work prior to accepting a permanent position with the Corps in 1977.   Since 1988, I have been the Senior Policy Advisor for Park Ranger Activities in the Natural Resources Management Branch, Operations Division, at Corps headquarters in Washington, D.C.

**DECLARATION OF STEPHEN B. AUSTIN - 1**

2.     In my current position in the Natural Resources Management Branch, I oversee the Corps Park Ranger Program to include the Visitor Assistance, Interpretation, Uniform, Public Safety, Youth Conservation Services, and Career Development programs.   I am responsible for developing strategic goals/objectives and implementing and directing national policy within these programs.   These programs further the Corps mission to manage the natural, cultural, and developed resources under Corps jurisdiction in the public interest, providing the public with safe and healthful recreational opportunities while protecting and enhancing these resources.   I am familiar with the laws and authorities for the Corps Natural Resources Management Program, including 36 C.F.R. Part 327, Rules and Regulations Governing Public Use of Corps of Engineers Water Resources Development Projects.   I directed the 1995 Visitor Assistance Program study and rulemaking that resulted in the current May 2000 version of 36 C.F.R. Part 327.   This declaration is based on my personal knowledge, as well as knowledge made available to me in the course of my duties with the Corps.   I make this declaration in support of Defendants' Opposition to the Plaintiffs' Motion for a Preliminary Injunction.

3.   General Background

a.     Congress authorized the Corps of Engineers to operate recreation areas on Water Resource Development Projects for general public use in Section 4 of the Flood Control Act of 1944.   This authority is codified in its current form at 16 U.S.C. § 460d.   In relevant part:

> The Chief of Engineers, under the supervision of the Secretary of the Army, is authorized to construct, maintain, and operate public park and recreational facilities at water resource development projects under the control of the Department of the Army. . .
>
> The water areas of all such projects shall be open to public use generally for boating, swimming, bathing, fishing, and other recreational purposes, and ready access to and exit from such areas along the shores of such projects shall be maintained for general public use, when such use is determined by the Secretary of the Army not to be contrary to the public interest, all under such rules and regulations as the Secretary of the Army may deem necessary, including but not limited to prohibitions of dumping and unauthorized disposal in any manner of refuse, garbage, rubbish, trash, debris, or litter of any kind at such water resource development projects, either into the waters of such projects or onto any land federally owned and administered by the Chief of Engineers.

b.     Under the authority at 16 U.S.C. § 460d, the Corps issued regulations governing the use of these projects by the public.   The Corps first issued regulations in the Federal Register on March 23, 1973.   38 Fed. Reg. 7552.   The regulations were published at 36 C.F.R. Part 327.   The Corps published the current version of the regulations in the Federal Register on February 11, 2000.   The Corps "designed [the regulations] to ensure safe, enjoyable and environmentally sound visitation on the public lands, free from unwarranted disturbances."   65 Fed. Reg. 6896.   The regulations state that the Corps policy is "to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and

healthful recreational opportunities while protecting and enhancing these resources." 36 C.F.R. § 327.1 (a).

c. The Corps manages the operation and maintenance of Water Resource Development Projects throughout the United States. These projects include navigational locks and dams, as well as multiple-purpose dams that have been authorized for flood control (or, more accurately, flood-damage risk reduction), hydropower, water supply, navigation, fish and wildlife conservation and/or recreation. Under the Operations-Natural Resources Management Program, the Corps manages 422 lake and river projects in 43 states and is the steward of 12 million acres of land and water used for recreation, with 54,879 miles of shoreline. See U.S. Army Corps of Engineers, Information Paper, Subject: Civil Works Program Statistics (March 20, 2012) (attached as Exhibit 1). Many of these projects serve as popular recreation destinations with 92,844 campsites, 3544 boat launch ramps, and 7700 miles of trails. Id. The Corps is the largest Federal provider of outdoor recreation with 370 million visits per year. Id. The Corps hosts 20% of all visits to federal recreation areas on just 2% of the Federal land base. Id. By comparison, the National Park System comprises 84 million acres and hosts 279 million visitors per year while Corps projects host 370 million visitors per year on only 12 million acres – which amounts to 10 times the density of use experienced in the National Parks. Id. and http://www.nps.gov/faqs.htm. This high-density, concentrated level of public use often results in very crowded conditions in many Corps park areas with accompanying safety, management, and rule enforcement challenges.

4. Corps Regulation of Firearm Possession and Usage

a. The Corps regulates but does not ban firearm possession and use at Water Resource Development Projects. Corps regulations allow for the carry and use of firearms and other weapons for hunting on a substantial portion of Corps project lands and waters totaling millions of acres as long as the hunting is in compliance with state and local law. 36 C.F.R. § 327.13(a)(2). In addition, firearm use and possession is authorized at approximately 32 public shooting ranges located at Corps projects. 36 C.F.R. § 327.13(a)(3). Federal, state and local law enforcement officers are also allowed to possess loaded firearms. 36 C.F.R. § 327.13(a)(1). Firearm possession is also authorized if the Corps District Commander has issued written permission. 36 C.F.R. § 327.13(a)(4). The possession of loaded firearms is otherwise prohibited. 36 C.F.R. § 327.13(a).

b. These restrictions have historically been part of the Corps regulations for these lands. Issued over 40 years ago, the first set of proposed regulations governing the use of Corps-managed Water Resource Development Projects contained a section on firearms. The proposed regulations were published in the September 21, 1972, Federal Register. 37 Fed. Reg. 19632, 19633. The proposed regulations contained the following section on firearms:

> § 327.13 Explosives, firearms, other weapons and fireworks.
>
> (a) The possession of firearms, ammunition, and projectal [sic] firing devices, bows and arrows, crossbow, and explosives of any kind is prohibited unless:
> (1) In the possession of a law enforcement officer or Government employee on

official duty;

(2) used for hunting during the hunting season as permitted under § 327.8; or

(3) a permit therefor [sic] has been issued by the District Engineer.

(b) The possession and use of fireworks is prohibited unless a permit therefor [sic] has been issued by the District Engineer.

The final rule was published in March 23, 1973, edition of the Federal Register.   38 Fed. Reg. 7552, 7553.   The final rule added the clarification that only loaded firearms were prohibited unless one of the three exceptions was met. The text of the final regulation:

§ 327.13 Explosives, firearms, other weapons, and fireworks.

(a) The possession of loaded firearms, ammunition, projectile firing devices, bows and arrows, cross bows, and explosives of any kind is prohibited unless:

(1) In the possession of a law enforcement officer or Government employee on official duty;

(2) used for hunting or fishing during the hunting or fishing season as permitted under § 327.8, or

(3) unless written permission has been received from the District Engineer.

(b) The possession or use of fireworks is prohibited unless written permission has been received from the District Engineer.

        c.      36 CFR Part 327, including § 327.13, has been amended three times since 1973.   Section 327.13 was amended in 1979 to add a provision allowing firearm use at authorized shooting ranges and to make changes to the exception for law enforcement officers.   Proposed rule 43 Fed. Reg. 5545, 5547 (Feb. 9, 1978) and Final Rule 44 Fed. Reg. 12671, 12674 (Mar 8, 1979).   § 327.13 was amended again in 1985 to consolidate the exception for law enforcement officers and to add the requirement that "devices," including firearms, be unloaded when being "transported from or between hunting and fishing sites."   Final Rule 50 Fed. Reg. 35,555 (Sept. 3, 1985).   The Corps most recently re-issued the part 327 regulations, including § 327.13, as a proposed rule in the Federal Register on July 20, 1999, and requested public comments.   64 Fed. Reg. 38,854.   The Corps did not receive any comments or objections on the re-issuance of 36 C.F.R. 327.13 and published the final rule in the February 11, 2000, Federal Register.   65 Fed. Reg. 6896. The text of the current rule:

§ 327.13 -- Explosives, firearms, other weapons and fireworks.

(a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:

(1) In the possession of a Federal, state or local law enforcement officer;

(2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;

(3) Being used at authorized shooting ranges; or

(4) Written permission has been received from the District Commander.

(b) Possession of explosives or explosive devices of any kind, including fireworks

or other pyrotechnics, is prohibited unless written permission has been received from the District Commander.

5.     Rationale behind Corps Regulation of Firearm Possession and Usage

       a.     36 C.F.R. §327.1 outlines the policy of the Secretary of the Army, acting through the Chief of Engineers, to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities while protecting and enhancing these resources.  The Corps must consider many factors when deciding whether it is in the public interest to open Water Resource Development Project areas for recreation and when developing the rules and regulations for the recreational use of the projects.  These factors generally include the safety of the visiting public, the safety of Corps employees and other government officials, the protection of the natural, cultural and developed resources and the promotion of recreation opportunities.  The rules regarding the use and possession of firearms at Corps-administered areas also require a delicate balancing of these competing factors.  The Corps has considered whether to allow for visitors to carry concealed weapons in accordance with state laws where the project was located.  See, for example, U.S. Army Corps of Engineers, Visitor and Ranger Safety Review, Appendix I, Recommended Changes to Title 36 at p. I-3 (Sept. 1995)(Appendix I is attached as Exhibit 2).  The Corps has also considered prohibiting firearms, loaded or unloaded.  Id.  The approach in § 327.13 reflects the result of the Corps' balancing of these competing factors with the ultimate goal of providing a safe recreational experience for the visiting public.

       b.     As part of its consideration of these many factors, the Corps must consider the overall project purposes and whether the use and possession of firearms for recreation related reasons is consistent with that purpose.  Areas on Corps projects designated for recreation are often co-located with infrastructure that requires heightened security measures.  This infrastructure includes flood control (or, more accurately, flood-damage risk reduction) structures such as dams and levees.  The Corps operates 702 dams and has built or controls 14,501 miles of levees.  Exhibit 1.  The Corps-managed infrastructure also includes power-generation facilities, where the Corps provides 24 percent of the Nation's hydropower capacity.  Id.  Also part of Corps-managed infrastructure are reservoirs that provide an important source of drinking water for millions of Americans; these reservoirs contain three trillion gallons of water storage used for municipal and industrial water with a yield sufficient to meet the needs of 96 million households. Id.

       c.     The Corps also must consider how to structure the regulation to provide for the safety of visitors.  Corps-managed recreation areas bring together a diverse mixture of visitors with their own lifestyles that influence how they enjoy their stay.  In general, Corps recreation facilities have a high density of use because many projects are close to major population centers. The Corps must consider potential sources of conflict between visitors and craft regulations to mitigate the sources of conflict.  For example, visitors staying at campgrounds sleep, cook meals, socialize with their companions, and enjoy nature all within a limited space.  Sources of conflict include preferences for varying tastes of music at different audible levels, loud socializing at times inconvenient to other visitors, consumption of alcohol and general infringements on other users'

space.  These problems are more acute at Corps recreation areas because of the high density of usage as compared to National Parks.  Corps regulations must be crafted to minimize these conflicts.  Corps regulations, for example, address these issues by setting rules on operation of vessels (§ 327.3), swimming (§ 327.5), sanitation (§ 327.9), fires (§ 327.10), pet control (§ 327.11), and establishing quiet hours (§ 327.12).  The Corps must ensure that the inevitable conflicts in how people enjoy such places are resolved as quickly and peacefully as possible.  The presence of a loaded firearm could far more quickly escalate such tension between visitors from a minor disagreement to a significant threat to public safety involving the potential use of deadly force by a visitor against another visitor or unarmed Corps Park Ranger.

    d. Another factor the Corps must consider is providing recreation opportunities that involve the use of firearms, such as hunting and target shooting.  The Corps regulations at 36 C.F.R. § 327.8 allow hunting on large areas of projects consistent with all federal, state and local laws.  There are approximately 32 shooting ranges located on Corps-managed projects.  These activities can be undertaken in appropriate locations and in a manner that does not endanger other visitors' safety or threaten infrastructure.  The regulations allow the Corps District Commander responsible for the project to make the local determination where these activities can take place.  The Corps regulations accommodate the use and possession of firearms incident to these activities.

    e. The Corps must also consider what law enforcement options are available to the agency.  The primary duty of Corps Park Rangers is visitor assistance - not a law enforcement officer - and accordingly, Corps Park Rangers do not carry weapons.  Congress has not authorized the Corps to have employees exercise full law enforcement powers at Water Resource Development project recreation areas.  Congress has only authorized the Corps Park Rangers to issue citations for violations of the regulations adopted under 16 U.S.C. 460d.  36 C.F.R. § 327.25.  Congress has not provided authority for Corps employees to carry firearms, execute search warrants or enforce other federal laws on Corps projects.  This is in contrast to the authority given the National Park Service, which allows designated Department of Interior employees to carry firearms, execute warrants, and enforce other federal laws within the National Park System.  16 U.S.C. § 1a-6(b)(1)-(3).  Accordingly, Corps Park Rangers are not trained and equipped to be law enforcement officers.  Corps Park Rangers could not enforce other federal firearms laws that could control firearm possession in some Corps facilities, such as Corps operated power-generation plants, because of their limited law enforcement authority.  Additionally, the potential of having armed visitors could have a chilling effect on the overall enforcement of Corps regulations since Corps Park Rangers would not be armed.  Congress has authorized the Corps to supplement law enforcement presence at projects during peak visitation periods through cooperative agreements that compensate local law enforcement agencies to provide increased patrols on Corps lands and waters.  Local law enforcement officers, however, can only enforce state and local laws and may be limited by other state and local law enforcement demands.  Local law enforcement officers cannot enforce federal laws including 36 C.F.R. Part 327.

    f. Taking all factors into consideration, the Corps determined that it is in the best overall public interest to restrict the possession of loaded firearms unless being used for

**DECLARATION OF STEPHEN B. AUSTIN** ER 58

hunting, target shooting or being carried by a law enforcement officer.   Structuring the regulation in this manner has accommodated the sporting use and possession of firearms, while appropriately accounting for infrastructure protection, visitor and Corps Park Ranger safety, and the limits of Corps law enforcement authority.

6.     The Corps would need to address a number of issues before repealing the current regulation on the use and possession of firearms and issuing a rule with a lesser prohibition on the possession of loaded firearms.

a.     In particular, the Corps would need to perform a full safety and security assessment of Corps-managed infrastructure to determine how best to secure the facilities in light of the heightened potential for the presence of firearms.   The Corps and the Department of Homeland Security have identified certain Corps-managed infrastructure as critical to homeland security and the economy, but the full evaluation is ongoing.   This is due to the fact that the majority of Corps facilities have multiple Congressionally authorized purposes, including navigation, flood control and water supply.   Recreation is never the sole purpose of a Corps-managed Water Resource Development Project.   Early detection of threats to this infrastructure, is aided by current Corps policy, and could be compromised by a too-permissive firearms regulation.   With an overly permissive regulation, Corps officials or other law enforcement officers could be in a position where they would not be able to intervene or ascertain any bad intent until a person with a firearm actually uses it.   If such a threat could not be mitigated, the Corps could consider further restriction for public access, which could stop popular tours and even close recreation areas completely.

b.     The Corps would also have to evaluate whether additional alcohol and other public-use restrictions on Corps projects would be necessary to maintain visitor and Corps Park Ranger security.   The Corps would need to consider current budgetary constraints that could limit available measures to mitigate safety issues associated with the increased presence of firearms, such as providing body armor for Corps Park Rangers.

c.     Additionally, the Corps would need to evaluate whether the current Congressionally-set funding limit for cooperative law enforcement agreements for increased law enforcement services would be adequate to support any additional armed law enforcement officers at Corps projects.   Finally, the Corps would need to publicize the new rule to visitors who might not see the rule in the Federal Register and would need to update signage at 4,248 (Exhibit 1) impacted recreation areas, which would be a significant budgetary impact.

d.     Finally, in order to change the regulation, the Corps would need to promulgate a new rule following the Administrative Procedures Act rulemaking requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Sept 5, 2013

Stephen B. Austin

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ⁊th____ day of September, 2013, the foregoing **DECLARATION OF STEPHEN B. AUSTIN** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

James M. Manley
Jmanley@mountainstateslegal.com

John L. Runft
Jrunft@runftsteele.com

Steven J. Lechner
Lechner@mountainstateslegal.com

I HEREBY CERTIFY that on this same day a copy was mailed via United States Postal

Service-prepaid to the following person(s):

NA

Danielle Narkin
Legal Assistant

**DECLARATION OF STEPHEN B. AUSTIN - 9**

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

James M. Manley, Esq. (CO No. 40327)
(*pro hac vice application filed concurrently*)
Steven J. Lechner, Esq. (CO No. 19853)
(*pro hac vice application filed concurrently*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and<br>ALAN C. BAKER,<br><br>              Plaintiffs,<br><br>      v.<br><br>U.S. ARMY CORPS OF ENGINEERS;<br>JOHN MCHUGH, Secretary of the<br>Army; LIEUTENANT GENERAL<br>THOMAS BOSTICK, Commanding<br>General and Chief of Engineers;<br>COLONEL JOHN S. KEM,<br>Northwestern Division Commander; and<br>LIEUTENANT COLONEL ANDREW<br>D. KELLY, Walla Walla District<br>Commander and District Engineer,<br><br>              Defendants. | Case No.<br><br><br><br>**COMPLAINT FOR DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Plaintiffs, by and through their undersigned attorneys, hereby file this Complaint against Defendants and allege as follows:

## NATURE OF THE CLAIMS

1.      Plaintiffs seek declaratory and injunctive relief for Defendants' deprivation of the right to keep and bear arms guaranteed by the United States Constitution.

## JURISDICTION

2.      This Court has federal question jurisdiction over Plaintiffs' claims for relief, pursuant to 28 U.S.C. § 1331, because the claims arise under the United States Constitution.

## VENUE

3.      Venue rests properly in this Court pursuant to 28 U.S.C. § 1391(e) and Dist. Idaho Loc. Civ. R. 3.1 because, *inter alia*, a substantial part of the events or omissions giving rise to the claim occurred in Nez Perce and Clearwater Counties, Idaho.

## PARTIES

4.      Plaintiff Alan C. Baker is a citizen of the United States and a resident of Latah County, Idaho.

5.      Mr. Baker is a NRA-Certified Home Firearm Safety, Personal Protection In The Home, Rifle, Pistol, and Shotgun Instructor, as well as a Utah-certified Concealed Firearms Instructor.  He is licensed to carry a concealed handgun pursuant to the laws of the States of Idaho, Utah, Oregon, and Arizona.  He regularly carries a handgun for self-defense.

6.      Mr. Baker is over 21 years old, has no history of substance abuse, has no criminal record, is not subject to a protection order, has demonstrated competency with a handgun, and has been approved by the Latah County Sheriff to carry a concealed handgun almost everywhere in the State.  *See* I.C. § 18-3302.

7.      Mr. Baker is a life-long outdoorsman.  He regularly camps and hunts in Idaho and has concrete plans to camp on lands administered by Defendants.  He has a credible fear of arrest, prosecution, incarceration, and/or fine if he were to possess a functional firearm while recreating on lands administered by Defendants.

8.      Defendants, by creating and enforcing the policy complained of in this action, are currently depriving Mr. Baker of the right to keep and bear arms guaranteed by the United States Constitution.

9.      Plaintiff Elizabeth E. Morris is a citizen of the United States and a resident of Nez Perce County, Idaho.

10.     Due to threats and physical attacks made against her by a former neighbor, the Nez Perce County Sheriff issued Ms. Morris an emergency license to carry a concealed handgun in 2012.  She regularly carries a handgun for self-defense.

11.     Ms. Morris is over 21 years old, has no history of substance abuse, has no criminal record, is not subject to a protection order, has demonstrated competency with a handgun, and has been approved by the Nez Perce County Sheriff to carry a concealed handgun almost everywhere in the State.  *See* I.C. § 18-3302.

12.     Ms. Morris regularly recreates on lands and waters administered by Defendants during the summer, as described in more detail below.  She has a credible fear of arrest, prosecution, incarceration, and/or fine if she were to possess a functional firearm while recreating on lands administered by Defendants.

13.     Defendants, by creating and enforcing the policy complained of in this action, are currently depriving Ms. Morris of the right to keep and bear arms guaranteed by the United States Constitution.

**ER44**

14.     Defendant U.S. Army Corps of Engineers ("the Corps"), under the direction of
the Chief of Engineers and the supervision of the Secretary of the Army, is authorized to
"operate public park and recreational facilities at water resource development projects under the
control of the Department of the Army . . . ." 16 U.S.C. § 460d.  Moreover,

> The water areas of all such projects shall be open to public use generally for
> boating, swimming, bathing, fishing, and other recreational purposes, and ready
> access to and exit from such areas along the shores of such projects shall be
> maintained for general public use, when such use is determined by the Secretary
> of the Army not to be contrary to the public interest, all under such rules and
> regulations as the Secretary of the Army may deem necessary . . . .

*Id*.  The Corps, by creating and enforcing the policy complained of in this action, currently is
depriving Plaintiffs of the right to keep and bear arms guaranteed by the United States
Constitution.

15.     The Corps is the largest provider of water-based outdoor recreation in the nation.
http://www.usace.army.mil/Missions/CivilWorks/Recreation.aspx.  It administers 422 lake and
river projects in 43 states, spanning 12 million acres, 55,000 miles of shoreline, 4,500 miles of
trails, 90,000 campsites, and 3,400 boat launch ramps.  *Id.*  Corps-administered waters provide
33 percent of all U.S. freshwater fishing.  *Id*.

16.     Defendant John McHugh is the Secretary of the Army.  Defendant McHugh is
responsible for the administration of the public park and recreational uses at water resource
development projects under the control of the Department of the Army and, by creating and
enforcing the policies complained of in this action, currently is depriving Plaintiffs of the right to
keep and bear arms guaranteed by the United States Constitution.  Defendant McHugh is sued in
his official capacity.

17.     Defendant Lieutenant General Thomas Bostick is the Commanding General and
Chief of Engineers for the Army Corps of Engineers.  Defendant Bostick is responsible for the

4

**ER45**

administration of the public park and recreational uses at water resource development projects under the control of the Department of the Army and, by creating and enforcing the policies complained of in this action, currently is depriving Plaintiffs of the right to keep and bear arms guaranteed by the United States Constitution.  Defendant Bostick is sued in his official capacity.

18.     Defendant Colonel John S. Kem is the Northwestern Division Commander. Defendant Kem is responsible for the administration of the public park and recreational uses in the Northwestern Division and, by creating and enforcing the policies complained of in this action, currently is depriving Plaintiffs of the right to keep and bear arms guaranteed by the United States Constitution.  Defendant Kem is sued in his official capacity.

19.     Defendant Lieutenant Colonel Andrew D. Kelly is the Walla Walla District Commander and District Engineer.  Defendant Kelley is responsible for the administration of the public park and recreational uses in the Walla Walla District.  By creating and enforcing the policies complained of in this action, he currently is depriving Plaintiffs of the right to keep and bear arms guaranteed by the United States Constitution.  Defendant Kelley is sued in his official capacity.

## LEGAL BACKGROUND

20.     The Second Amendment to the United States Constitution provides:  "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

21.     The Second Amendment guarantees individuals a fundamental right to possess functional firearms in a dwelling for self-defense.

22.     A tent is a temporary dwelling to which the guarantees of the Second Amendment apply.

5

**ER46**

23.     The Second Amendment guarantees individuals a fundamental right to carry functional firearms for self-defense.

24.     With certain limited exceptions not applicable to Plaintiffs, Defendants' regulations prohibit law-abiding individuals from possessing or carrying functional firearms— openly, concealed, and in a vehicle—on any water resources development project administered by the Chief of Engineers ("Corps-administered public lands").  36 C.F.R. § 327.13.

25.     Violation of 36 C.F.R. § 327.13 is punishable by fine, imprisonment, or both. 36 C.F.R. § 327.25.

26.     The District Commander is empowered to authorize possession of firearms on Corps-administered public lands.  36 C.F.R. § 327.13(a)(4).

## STATEMENT OF FACTS

### Alan C. Baker

27.     Dworshak Dam and Reservoir ("Dworshak") was constructed in 1972.  Dworshak is located on the North Fork Clearwater River in Clearwater County, Idaho.  It is located in the Walla Walla District.

28.     Dworshak's Dent Acres Campground is a Corps-administered campground with 50 campsites, and it accommodates both tents and recreational vehicles.  The day use area of the campground provides picnic tables, group shelters, grills, drinking water, showers, a boat launch, and other amenities.

29.     On March 22, 2013, Mr. Baker secured a reservation for a campsite at Dent Acres for May 31, 2013, to June 2, 2013.

30.     Security personnel do not electronically screen persons entering Corps-administered campgrounds to determine whether persons are carrying firearms or weapons of any kind.

31.     Security personnel do not restrict access to Corps-administered campgrounds to only those persons who have been screened and determined to be unarmed.

32.     On April 22, 2013, Mr. Baker, through counsel, contacted District Commander Kelley to request that he recognize Mr. Baker's right to bear arms pursuant to 36 C.F.R. § 327.13(a)(4).

33.     Given Mr. Baker's scheduled trip to Dent Acres, he requested a response to his letter within 30 calendar days of its delivery to District Commander Kelley.  The letter was delivered on April 29, 2013; to date, Mr. Baker has received no response.

34.     On May 31, 2013, Mr. Baker camped at Dent Acres as planned, but could not exercise his right to keep and bear arms due to Defendants' active enforcement of 36 C.F.R. § 327.13.

35.      Mr. Baker suffers an injury to his constitutionally protected right to keep and bear arms due to Defendants' active enforcement of 36 C.F.R. § 327.13.

36.     Mr. Baker has reservations to camp at the Corps-administered campground at Macks Creek Park at Lucky Peak Lake from September 27, 2013, to September 29, 2013.

37.     Macks Creek Park is in the Walla Walla District.

38.     But for Defendants' active enforcement of 36 C.F.R. § 327.13, Mr. Baker would possess a functional firearm while recreating on Corps-administered public lands.

**Elizabeth E. Morris**

39.     Ms. Morris uses Corps-administered public lands near the Snake River in Lewiston, Idaho, to boat with friends, regularly walks the Corps-administered paths in the area with her dog and/or her family, and must travel across Corps-administered public lands to reach Hells Gate State Park.  These Corps-administered public lands are in the Walla Walla District and include the Lower Granite Lake Greenbelt Trail, Swallows Park, the Lewiston Levee Parkway, and the Lewiston Levee Recreation Trail.  She also frequents Dworshak and the surrounding areas to hike.  She has considered camping at Dworshak, but has decided not to because Defendants' regulations make it unlawful for her to possess a functional firearm while camping.  In summer 2012, she used Corps-administered public lands approximately 1–2 times a week.  She has done exactly the same in summer 2013 and plans to continue to do so in the future.

40.     Security personnel do not electronically screen persons using the Corps-administered public lands frequented by Ms. Morris to determine whether persons are carrying firearms or weapons of any kind.

41.     Security personnel do not restrict access to the Corps-administered public lands frequented by Ms. Morris to only those persons who have been screened and determined to be unarmed.

42.     On June 10, 2013, Ms. Morris, through counsel, contacted District Commander Kelley to request that he recognize Ms. Morris's right to bear arms pursuant to 36 C.F.R. § 327.13(a)(4).

43.     Given Ms. Morris's practice of regularly recreating on Corps-administered public lands during the summer, she requested a response to her letter within 30 calendar days of its

delivery to District Commander Kelley.  The letter was delivered on June 14, 2013; to date, Ms. Morris has received no response.

44.     Ms. Morris suffers an injury to her constitutionally protected right to keep and bear arms due to Defendants' active enforcement of 36 C.F.R. § 327.13.

45.     But for Defendants' active enforcement of 36 C.F.R. § 327.13, Ms. Morris would possess a functional firearm while recreating on Corps-administered public lands.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Ban on Possession of Firearms in a Tent)**
**(Right to Keep and Bear Arms)**
**(Declaratory and Injunctive Relief)**

46.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if the same were fully set forth here.

47.     The right to keep and bear functional firearms for the core lawful purpose of self-defense is guaranteed by the Second Amendment to the United States Constitution.

48.     Defendants' regulations prohibit law-abiding individuals, including Plaintiffs, from possessing a functional firearm in a temporary dwelling, such as a tent, on Corps-administered public lands.  36 C.F.R. § 327.13.

49.     By prohibiting Plaintiffs from possessing a functional firearm in a temporary dwelling, such as a tent, on Corps-administered public lands, Defendants currently maintain and actively enforce a set of laws, practices, and policies that deprive Plaintiffs of the right to keep and bear arms, in violation of the Second Amendment.

50.     Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies.  *See* 28 U.S.C. §§ 2201, 2202.

**SECOND CLAIM FOR RELIEF**
**(Ban on Carrying Firearms)**
**(Right to Keep and Bear Arms)**
**(Declaratory and Injunctive Relief)**

51.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if the same were fully set forth here.

52.     The right to keep and bear functional firearms for the core lawful purpose of self-defense is guaranteed by the Second Amendment to the United States Constitution.

53.     Defendants' regulations prohibit law-abiding individuals, including Plaintiffs, from carrying a functional firearm—openly, concealed, and in a vehicle—on Corps-administered public lands.  36 C.F.R. § 327.13.

54.     By prohibiting Plaintiffs from carrying a functional firearm—openly, concealed, and in a vehicle—on Corps-administered public lands, Defendants currently maintain and actively enforce a set of laws, practices, and policies that deprive Plaintiffs of the right to keep and bear arms, in violation of the Second Amendment.

55.     Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies.  *See* 28 U.S.C. §§ 2201, 2202.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment for Plaintiffs as follows:

A.     Declare that 36 C.F.R. § 327.13 deprives Plaintiffs of the right to keep and bear arms for self-defense guaranteed by the Second Amendment by prohibiting Plaintiffs from possessing functional firearms in tents on Corps-administered public lands;

B.       Declare that 36 C.F.R. § 327.13 deprives Plaintiffs of the right to keep and bear arms for self-defense guaranteed by the Second Amendment by prohibiting Plaintiffs from carrying functional firearms—openly, concealed, and in a vehicle—on Corps-administered public lands;

C.       Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 36 C.F.R. § 327.13, which prohibits possession and carrying of functional firearms on Corps-administered public lands;

D.       Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with law;

E.       Award Plaintiffs any further relief this Court deems just and equitable.

DATED this 5th day of August 2013.

Respectfully submitted,


/s/ John L. Runft
John L. Runft, Esq.
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

James M. Manley, Esq.
(*pro hac vice application filed concurrently*)
Steven J. Lechner, Esq.
(*pro hac vice application filed concurrently*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com

Attorneys for Plaintiffs

# US District Court Civil Docket

U.S. District - Idaho
(Moscow - Central)

## 3:13cv336

## Morris et al v. U.S. Army Corps of Engineers et al

This case was retrieved from the court on Tuesday, October 14, 2014

Date Filed: 08/05/2013
Assigned To: Judge B. Lynn Winmill
Referred To:
Nature of suit: Other Civil Rights (440)
Cause: Fed. Question
Lead Docket: None
Other Docket: None
Jurisdiction: Federal Question

Class Code: CLOSED
Closed: 10/13/2014
Statute: 28:1331
Jury Demand: None
Demand Amount: $0
NOS Description: Other Civil Rights

| Litigants | Attorneys |
|---|---|
| Elizabeth Morris<br>Plaintiff | **James M Manley**<br>LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED<br>[Term: 08/27/2014]<br>Mountain States Legal Foundation<br>2596 S. Lewis Way<br>Lakewood , CO  80227<br>USA<br>303-292-2021x25<br>Email:Jmanley@mountainstateslegal.Com<br><br>**John L Runft**<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>RUNFT & STEELE LAW OFFICES<br>1020 W Main #400<br>Boise , ID  83702<br>USA<br>(208) 333-8506<br>Fax: 1-208-343-3246<br>Email:Jrunft@runftsteele.Com<br><br>**Steven J Lechner**<br>LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Mountain States Legal Foundation<br>2596 South Lewis Way<br>Lakewood , CO  80227<br>USA<br>303-292-2021x21<br>Fax: 303-292-1980<br>Email:Lechner@mountainstateslegal.Com |
| Alan C. Baker<br>Plaintiff | **James M Manley**<br>LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED<br>[Term: 08/27/2014]<br>Mountain States Legal Foundation<br>2596 S. Lewis Way<br>Lakewood , CO  80227<br>USA<br>303-292-2021x25<br>Email:Jmanley@mountainstateslegal.Com |

John L Runft
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
RUNFT & STEELE LAW OFFICES
1020 W Main #400
Boise , ID  83702
USA
(208) 333-8506
Fax: 1-208-343-3246
Email: Jrunft@runftsteele.Com

Steven J Lechner
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood , CO  80227
USA
303-292-2021x21
Fax: 303-292-1980
Email: Lechner@mountainstateslegal.Com

**U.S. Army Corps of Engineers**
**Defendant**

Joanne P Rodriguez
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
US ATTORNEY'S OFFICE
Washington Group Plaza Iv 800 E. Park Blvd, Suite 600
Boise , ID  83712
USA
(208) 334-1211
Fax: 1-208-334-1414
Email: Joanne.Rodriguez@usdoj.Gov

Daniel M Riess
ATTORNEY TO BE NOTICED
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. Nw
Washington , DC  20530
USA
(202) 353-3098
Email: Daniel.Riess@usdoj.Gov

**John Mchugh**
**Secretary of the Army**
**Defendant**

Joanne P Rodriguez
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
US ATTORNEY'S OFFICE
Washington Group Plaza Iv 800 E. Park Blvd, Suite 600
Boise , ID  83712
USA
(208) 334-1211
Fax: 1-208-334-1414
Email: Joanne.Rodriguez@usdoj.Gov

Daniel M Riess
ATTORNEY TO BE NOTICED
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. Nw
Washington , DC  20530
USA
(202) 353-3098
Email: Daniel.Riess@usdoj.Gov

**Thomas Bostick**
**Lieutenant General, Commanding General and Chief**
**Engineers**
**Defendant**

Joanne P Rodriguez
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
US ATTORNEY'S OFFICE
Washington Group Plaza Iv 800 E. Park Blvd, Suite 600
Boise , ID  83712
USA
(208) 334-1211
Fax: 1-208-334-1414
Email: Joanne.Rodriguez@usdoj.Gov

Daniel M Riess
ATTORNEY TO BE NOTICED
U.S. Department of Justice, Civil Division

20 Massachusetts Ave. Nw
Washington , DC  20530
USA
(202) 353-3098
Email:Daniel.Riess@usdoj.Gov

| | |
|---|---|
| John S. Kem<br>Colonel, Northwestern Division Commander<br>Defendant | **Joanne P Rodriguez**<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>**US ATTORNEY'S OFFICE**<br>Washington Group Plaza Iv 800 E. Park Blvd, Suite 600<br>Boise , ID  83712<br>USA<br>(208) 334-1211<br>Fax: 1-208-334-1414<br>Email:Joanne.Rodriguez@usdoj.Gov<br><br>**Daniel M Riess**<br>ATTORNEY TO BE NOTICED<br>U.S. Department of Justice, Civil Division<br>20 Massachusetts Ave. Nw<br>Washington , DC  20530<br>USA<br>(202) 353-3098<br>Email:Daniel.Riess@usdoj.Gov |
| Andrew D. Kelly<br>Lieutenant Colonel, Walla Walla District Comander and<br>District Engineer<br>Defendant | **Joanne P Rodriguez**<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>**US ATTORNEY'S OFFICE**<br>Washington Group Plaza Iv 800 E. Park Blvd, Suite 600<br>Boise , ID  83712<br>USA<br>(208) 334-1211<br>Fax: 1-208-334-1414<br>Email:Joanne.Rodriguez@usdoj.Gov<br><br>**Daniel M Riess**<br>ATTORNEY TO BE NOTICED<br>U.S. Department of Justice, Civil Division<br>20 Massachusetts Ave. Nw<br>Washington , DC  20530<br>USA<br>(202) 353-3098<br>Email:Daniel.Riess@usdoj.Gov |

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 08/05/2013 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0976-1045347.), filed by All Plaintiffs. (Attachments: # 1 Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons)(Runft, John) | |
| 08/05/2013 | 2 | MOTION FOR PRO HAC VICE APPEARANCE by James M. Manley. ( Filing fee $ 225 receipt number 0976-1045359.)John L Runft appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 8/29/2013 (Runft, John) | |
| 08/05/2013 | 3 | MOTION FOR PRO HAC VICE APPEARANCE by Steven J. Lechner. ( Filing fee $ 225 receipt number 0976-1045383.)John L Runft appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 8/29/2013 (Runft, John) | |
| 08/05/2013 | 4 | MOTION for Preliminary Injunction John L Runft appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 8/29/2013 (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Runft, John) | |
| 08/06/2013 | 5 | DOCKET ENTRY ORDER reassigning case to a district judge to consider the motion for preliminary injunction (Dkt. 4). There are no consents to magistrate judge jurisdiction filed in this case and magistrate judges lack jurisdiction to consider requests for injunctive relief without the consent of all parties. 28 U.S.C. § 636. Accordingly, the Clerk of the Court shall reassign this case to a district judge. Signed by Judge Ronald E. Bush. ((kb) | |
| 08/07/2013 | | DOCKET ENTRY NOTICE of Case Number Change, Case reassigned to Judge B. Lynn Winmill for all further proceedings. Judge Ronald E. Bush no longer assigned to case. Please use this case number on all future pleadings, 3:13-cv-00336-BLW (krb) | |

ER55

| | | |
|---|---|---|
| 08/07/2013 | | DOCKET ENTRY ORDER approving 2 Motion for Pro Hac Vice Appearance of attorney James M Manley for Alan C. Baker,James M Manley for Elizabeth Morris Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk). Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (krb) |
| 08/07/2013 | 6 | DOCKET ENTRY ORDER approving 3 Motion for Pro Hac Vice Appearance of attorney Steven J Lechner for Alan C. Baker,Steven J Lechner for Elizabeth Morris Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (krb) |
| 08/07/2013 | 7 | Summons Issued as to All Defendants (Print attached Summons for service.) (Attachments: # 1 Summons 2, # 2 Summons 3, # 3 Summons 4, # 4 Summons 5) (krb) |
| 08/07/2013 | 8 | SUPPLEMENT by Plaintiffs Alan C. Baker, Elizabeth Morris re 4 MOTION for Preliminary Injunction Replacement Exhibit 1 to Memorandum. (Runft, John) |
| 08/07/2013 | 9 | SUPPLEMENT by Plaintiffs Alan C. Baker, Elizabeth Morris re 4 MOTION for Preliminary Injunction Replacement Exh 2 to Memorandum. (Runft, John) |
| 08/07/2013 | 10 | SUPPLEMENT by Plaintiffs Alan C. Baker, Elizabeth Morris re 4 MOTION for Preliminary Injunction Replacement Exh 3 to Memorandum. (Runft, John) |
| 08/07/2013 | 11 | Summons Issued as to U.S. Attorney and U.S. Attorney General (Print attached Summons for service.) (Attachments: # 1 Summons 2)(krb) |
| 08/07/2013 | 12 | CERTIFICATE OF SERVICE by Alan C. Baker, Elizabeth Morris re 4 MOTION for Preliminary Injunction (Lechner, Steven) |
| 08/15/2013 | 13 | NOTICE of Appearance by Joanne P Rodriguez on behalf of Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers (Rodriguez, Joanne) |
| 08/15/2013 | 14 | MOTION for Extension of Time to File Response/Reply as to 4 MOTION for Preliminary Injunction Joanne P Rodriguez appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 9/9/2013 (Rodriguez, Joanne) |
| 08/20/2013 | 15 | SUMMONS Returned Executed by Elizabeth Morris, Alan C. Baker. All Defendants. (Attachments: # 1 Summons Summons Returned Executed as to JOHN MCHUGH, # 2 Summons Returned Executed as to THOMAS BOSTICK, # 3 Summons Returned Executed as to JOHN S. KEM, # 4 Summons Returned Executed as to ANDREW D. KELLY, # 5 Summons Returned Executed as to ERIC HOLDER, # 6 Summons Returned Executed as to CIVIL PROCESS CLERK)(Manley, James) |
| 09/02/2013 | 16 | DOCKET ENTRY ORDER granting 14 Motion for Extension of Time to File Response/Reply. The Government shall file its response to the motion for preliminary injunction on or before September 6, 2013. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm) |
| 09/03/2013 | | Reset Deadlines as to 4 MOTION for Preliminary Injunction. Responses due by 9/6/2013. Per Order dkt #16. (cjm) |
| 09/05/2013 | 17 | MOTION for Leave to File Excess Pages in Response Brief Joanne P Rodriguez appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 9/30/2013 (Rodriguez, Joanne) |
| 09/05/2013 | 18 | MEMORANDUM in Opposition re 4 MOTION for Preliminary Injunction filed by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Replies due by 9/23/2013. (Attachments: # 1 Affidavit Declaration of Stephen B. Austin, # 2 Exhibit Declaration Exhibit 1, # 3 Exhibit Declaration Exhibit 2)(Rodriguez, Joanne) |
| 09/06/2013 | 19 | DOCKET ENTRY ORDER granting 17 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm) |
| 09/23/2013 | 20 | First MOTION for Leave to File Excess Pages James M Manley appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 10/18/2013 (Manley, James) |
| 09/23/2013 | 21 | REPLY to Response to Motion re 4 MOTION for Preliminary Injunction filed by Alan C. Baker, Elizabeth Morris.(Manley, James) |
| 09/25/2013 | 22 | ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION TO EXCEED PAGE LIMITS granting 20 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses |

ERSd

listed on the Notice of Electronic Filing (NEF) by (krb) (Entered: 09/26/2013)

09/30/2013 23 UNOPPOSED MOTION for Hearing re 4 MOTION for Preliminary Injunction James M Manley appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 10/24/2013 (Manley, James) Modified on 9/30/2013 to edit text (jp).

10/01/2013 24 MOTION to Stay Joanne P Rodriguez appearing for Defendant U.S. Army Corps of Engineers. Responses due by 10/25/2013 (Rodriguez, Joanne)

10/01/2013 25 ORDER granting 24 Motion to Stay. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp)

10/01/2013 26 DOCKET ENTRY ORDER The Stay 25 is LIFTED AND WITHDRAWN. It did not apply to applications for emergency relief of any type including the application in this case. Accordingly, the Clerk may set this matter for oral argument and the case may proceed. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm)

10/02/2013 27 DOCKET ENTRY ORDERThe prior decision 26 lifting the stay is hereby MODIFIED. The stay granted by Order 25 remains in full force and effect as to all aspects of this case except the briefing and resolution of the motion for preliminary injunction 4 . Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm)

10/28/2013 28 NOTICE of Appearance by Daniel M Riess on behalf of All Defendants (Riess, Daniel)

10/28/2013 29 ORDER The stay (docket nos. 25 &amp; 27 ) is LIFTED and the motion for hearing (docket no. 23 ) is GRANTED. It is further ordered, that a hearing be held on the motion for preliminary injunction (docket no. 4 ) on 12/5/13 at 9:00 a.m. in the Federal Courthouse in Boise Idaho. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp)

10/28/2013 Set/Reset Deadlines as to 4 MOTION for Preliminary Injunction . Per Order dkt 29 Motion Hearing set for 12/5/2013 09:00 AM in Boise - Courtroom 3 before Judge B. Lynn Winmill. (jp)

11/01/2013 30 MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ( Responses due by 11/25/2013)Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2)(Riess, Daniel)

11/19/2013 31 AMENDED DOCKET ENTRY NOTICE OF HEARING: The Motion hearing set for 12/5/2013 is RESCHEDULED for 1/7/2014 at 10:00 AM in Boise - Courtroom 3 before Judge B. Lynn Winmill. The following motions will be addressed at the hearing: 4 Motion for Preliminary Injunction and 30 Motion to Dismiss. (jlg)

11/20/2013 32 NOTICE by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers of Recent Authority (Attachments: # 1 Exhibit United States v Chovan)(Riess, Daniel)

11/25/2013 33 MEMORANDUM in Opposition re 30 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Alan C. Baker, Elizabeth Morris. Replies due by 12/12/2013. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2)(Manley, James)

12/03/2013 34 Consent MOTION for Extension of Time to File Response/Reply as to 30 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 12/27/2013 (Riess, Daniel)

12/04/2013 35 DOCKET ENTRY ORDER granting 34 Motion for Extension of Time to File Response/Reply. The defendant shall file a reply brief regarding its motion to dismiss on or before December 19, 2013. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm)

12/06/2013 Set/Reset Deadlines as to 30 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM .Per Order dkt 35 Replies due by 12/19/2013. (jp)

12/12/2013 36 Consent MOTION for Leave to File Excess Pages in Reply Brief Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 1/6/2014 (Riess, Daniel)

12/13/2013 37 DOCKET ENTRY ORDER denying 36 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm)

| 12/19/2013 | 38 | REPLY to Response to Motion re 30 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers.(Riess, Daniel) |
|---|---|---|
| 12/19/2013 | | CORRECTIVE ENTRY - The entry docket number 38 Reply to Response to Motion, filed by Thomas Bostick, U.S. Army Corps of Engineers, John S. Kem, John McHugh, Andrew D. Kelly was filed incorrectly in this case as it pertains to the Certificate of Service only. The filing party shall refer to ECF Procedures #8 and re-submit their correct certificate of service using event of "Certificate of Service" located under Service of Process and link to docket 38. (cjm) |
| 12/19/2013 | 39 | CERTIFICATE OF SERVICE by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers re 38 Reply to Response to Motion, (Riess, Daniel) |
| 01/03/2014 | 40 | NOTICE by Alan C. Baker, Elizabeth Morris Supplemental Authority (Attachments: # 1 Exhibit)(Manley, James) Modified on 1/3/2014 to remove all capitalization (cjm). |
| 01/07/2014 | 41 | Minute Entry for proceedings held before Judge B. Lynn Winmill: Motion Hearing held on 1/7/2014 re 4 Motion for Preliminary Injunction, and 30 Motion to Dismiss. The matter was taken under advisement. (Court Reporter Tammy Hohenleitner.) (jlg) |
| 01/10/2014 | 42 | MEMORANDUM DECISION &amp; ORDER The motion to dismiss (docket no. 30 ) is DENIED. The motion for preliminary injunction (docket no. 4 ) is GRANTED. The Corps is enjoined from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense. This preliminary injunction shall remain in force until further notice of the Court. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) |
| 01/17/2014 | 43 | DOCKET ENTRY NOTICE OF HEARING: A Telephonic Status Conference is set for 2/19/2014 at 10:00 AM before Judge B. Lynn Winmill. The plaintiff is directed to initiate the conference call. The Court can be reached at 208-334-9145. (jlg) |
| 02/26/2014 | 44 | Joint MOTION to Enter Proposed Schedule Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 3/24/2014 (Riess, Daniel) |
| 02/27/2014 | 45 | ORDER Granting 44 Joint MOTION to Enter Proposed Schedule. Defendants shall file an answer in this case on or before 3/19/14. Defendants shall file the administrative record in this case on or before 4/19/14. Defendants' motion for summary judgment shall be due on or before 5/19/14. Plaintiffs' cross-motion for summary judgment and opposition to Defendants' motion for summary judgment (including any opposition under Federal Rule of Civil Procedure 56(d)) shall be due on or before 6/19/14. ( Admin Record due by 4/19/14: Case Mgmt ddl set for 4/19/2014, Motions for Summary Judgment due by 5/19/2014, Cross Motions due by 6/19/2014). Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) |
| 03/19/2014 | 46 | ANSWER to 1 Complaint by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers.(Riess, Daniel) |
| 04/15/2014 | 47 | Consent MOTION for Extension of Time to File Administrative Record Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 5/9/2014 (Riess, Daniel) |
| 04/16/2014 | 48 | DOCKET ENTRY ORDER granting 47 Motion for Extension of Time to File. The administrative record shall be filed on or before April 22, 2014. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm) |
| 04/22/2014 | 49 | Administrative Record by Daniel M Riess on behalf of Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. (Disc on shelf in Clerk's Office) (jp) |
| 04/22/2014 | 50 | NOTICE by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers of Conventional Filing of Certified Administrative Record (Riess, Daniel) |
| 05/14/2014 | 51 | Consent MOTION for Leave to File Excess Pages in Motion for Summary Judgment Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 6/9/2014 (Riess, Daniel) |
| 05/19/2014 | 52 | MOTION for Summary Judgment Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. |

| | | |
|---|---|---|
| | | Responses due by 6/12/2014 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts)(Riess, Daniel) |
| 05/20/2014 | 53 | DOCKET ENTRY NOTICE OF HEARING regarding 52 Motion for Summary Judgment: A Motion Hearing is set for 8/27/2014 at 2:00 PM in Coeur d Alene - District Courtroom before Judge B. Lynn Winmill. (jlg) |
| 06/19/2014 | 54 | Cross MOTION for Summary Judgment James M Manley appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 7/14/2014 (Attachments: # 1 Memorandum in Support Memorandum In Support Of Plaintiffs Cross-Motion For Summary Judgment And Response In Opposition To Defendants Motion For Summary Judgment, # 2 Exhibit Plaintiffs Statement Of Undisputed Material Facts, # 3 Exhibit Plaintiffs Response To Defendants Statement Of Material Facts) (Manley, James) |
| 06/20/2014 | 55 | DOCKET ENTRY NOTICE OF HEARING regarding 52 Motion for Summary Judgment and 54 Cross Motion for Summary Judgment: A Motion Hearing is set for both motions on 8/27/2014 at 2:00 PM in Coeur d Alene - District Courtroom before Judge B. Lynn Winmill. (jlg) |
| 07/14/2014 | 56 | Consent MOTION for Extension of Time to File Response/Reply (Closing Merits Brief) Daniel M Riess appearing for Defendants Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Responses due by 8/7/2014 (Riess, Daniel) |
| 07/14/2014 | 57 | DOCKET ENTRY ORDER granting 51 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm) |
| 07/14/2014 | 58 | ORDER Defendants' unopposed motion for extension of time to file their closing merits brief [ECF No. 56] is GRANTED. Defendants shall file their reply brief on or before 7/25/14. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) (Entered: 07/15/2014) |
| 07/25/2014 | 59 | MEMORANDUM in Opposition re 54 Cross MOTION for Summary Judgment filed by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers. Replies due by 8/11/2014. (Attachments: # 1 Response to Plaintiffs' Statement of Material Facts)(Riess, Daniel) |
| 07/25/2014 | 60 | REPLY to Response to Motion re 52 MOTION for Summary Judgment filed by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers.(Riess, Daniel) |
| 08/19/2014 | 61 | NOTICE by Thomas Bostick, Andrew D. Kelly, John S. Kem, John McHugh, U.S. Army Corps of Engineers of Recent Authority (Attachments: # 1 Exhibit)(Riess, Daniel) |
| 08/21/2014 | 62 | AMENDED DOCKET ENTRY NOTICE OF HEARING regarding 52 Motion for Summary Judgment and 54 Cross Motion for Summary Judgment: Due to the Court's trial calendar, the Motion Hearing set for 8/27/2014 at 2:00 PM is rescheduled to begin at 3:30 PM in Coeur d Alene - District Courtroom before Judge B. Lynn Winmill. Please note, this is a time change only. (jlg) |
| 08/21/2014 | 63 | REPLY to Response to Motion re 54 Cross MOTION for Summary Judgment filed by Alan C. Baker, Elizabeth Morris.(Manley, James) |
| 08/26/2014 | 64 | MOTION to Withdraw as Attorney James M Manley appearing for Plaintiffs Alan C. Baker, Elizabeth Morris. Responses due by 9/19/2014 (Manley, James) |
| 08/27/2014 | 65 | DOCKET ENTRY ORDER granting 64 Motion to Withdraw as Attorney. Attorney James M Manley terminated. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (dm) |
| 08/27/2014 | 66 | Minute Entry for proceedings held before Judge B. Lynn Winmill: Motion Hearing held on 8/27/2014 re 52 Motion for Summary Judgment and 54 Cross Motion for Summary Judgment. Motions taken under advisement. A written decision is forthcoming. (ESR Bonnie Crowder.) (jlg) |
| 10/13/2014 | 67 | MEMORANDUM DECISION. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) (Entered: 10/13/2014) [Events <br>since&nbsplast <br>full&nbspupdate] |
| 10/13/2014 | 68 | JUDGMENT the plaintiffs' motion for summary judgment (docket no. 54) isGRANTED and the defendants' motion for summary judgment (docket no. 52) isDENIED. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) (Entered: 10/13/2014) [Events <br>since&nbsplast <br>full&nbspupdate] |

Order documents from our nationwide document retrieval service.
- OR - Call 1.866.540.8818.

Copyright © 2014 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2015, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system.

The plaintiffs in this case are registered CM/ECF users.

s/*Abby C. Wright*
ABBY C. WRIGHT
Counsel for Appellants