No. 14-36049

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

### ELIZABETH E. NESBITT; ALAN C. BAKER,

*Plaintiffs-Appellees,*

v.

### U.S. ARMY CORPS OF ENGINEERS; JOHN McHUGH, Secretary of the Army; THOMAS BOSTICK, Lieutenant General, Commanding General and Chief of Engineers; SCOTT A. SPELLMON, Brigadier General, Northwestern Division Commander; TIMOTHY R. VAIL, Lieutenant Colonel, Walla Walla District Commander and District Engineer,

*Defendants-Appellants.*

————————————

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

————————————

### REPLY BRIEF FOR APPELLANTS

————————————

BENJAMIN C. MIZER
  *Principal Deputy*
  *Assistant Attorney General*

WENDY J. OLSON
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
ABBY C. WRIGHT
  (202) 514-0664
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.    The District Court's Reasoning Was Flawed, and The Judgment Permanently Enjoining the Corps Must Be Reversed ...............................................................3

    A.    The Army Corps Regulation Does Not "Destroy" Plaintiffs' Second Amendment Rights ...........................................................4

    B.    Restrictions on Firearms Possession While on Army Corps Property Do Not Burden Conduct Protected by the Second Amendment .......6

II.    The Army Corps Regulation Does Not Run Afoul of the Second Amendment .........................................................................................13

    A.    Strict Scrutiny Does Not Apply. ...........................................14

    B.    The Army Corps Regulation Satisfies the Appropriate Level of Scrutiny. ...................................................................................15

    C.    Plaintiffs' Argument That They Wish To Possess Firearms in Their Tents Does Not Advance Their Claim. ...........................................20

    D.    The District Court's Injunction Is Too Broad. ....................................21

CONCLUSION .....................................................................................................22

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Adderley v. Florida,*
385 U.S. 39 (1966) ......................................................................................................10

*Bonidy v. U.S. Postal Serv.,*
790 F.3d 1121 (10th Cir. 2015 .......................................................................... *passim*

*District of Columbia v. Heller,*
554 U.S. 570 ...................................................................................................... *passim*

*Engquist v. Oregon Dep't of Agric.,*
553 U.S. 591 (2008) ....................................................................................................10

*Fyock v. City of Sunnyvale,*
779 F.3d 991 (9th Cir. 2015) .......................................................................................16

*GeorgiaCarry.Org v. Georgia,*
687 F.3d 1244 (11th Cir. 2012) .....................................................................................5

*GeorgiaCarry.Org v. U.S. Army Corps of Eng'rs,*
788 F.3d 1318 (11th Cir. 2015) .....................................................................1, 4, 5, 22

*Hernandez v. Reno,*
91 F.3d 776 (5th Cir. 1996) .........................................................................................21

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.,*
276 F.3d 876 (6th Cir. 2002) .......................................................................................14

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ......................................................................................................6

*Moore v. Madigan,*
702 F.3d 933 (7th Cir. 2012) ................................................................................... 2, 4

*Nordyke v. King,*
563 F.3d 439 (9th Cir. 2009)
*vacated on reh'g en banc*, 611 F.3d 1015 (9th Cir. 2010) .............................................7

*Nordyke v. King,*
 681 F.3d 1041 (9th Cir. 2012) ...................................................................10

*NRA v. ATF,*
 700 F.3d 185 (5th Cir. 2012) ....................................................................14

*Peruta v. County of San Diego,*
 742 F.3d 1144, 1168 (9th Cir. 2014), *vacated,* __ F.3d __,
 No. 10-56971 (9th Cir. Mar. 26, 2015) ................................................. 1, 3

*Prince v. Jacoby,*
 303 F.3d 1074 (9th Cir. 2002) ...................................................................14

*Rosenberger v. Rectors & Visitors of the Univ. of Va.,*
 515 U.S. 819 (1995) ...................................................................................14

*United States v. Barton,*
 633 F.3d 168 (3d Cir. 2011) ......................................................................12

*United States v. Chester,*
 628 F.3d 673 (4th Cir. 2010) ................................................................. 3, 16

*United States v. Chovan,*
 735 F.3d 1127 (9th Cir. 2013) ........................................................... *passim*

*United States v. Dorosan,*
 350 F. App'x 874 (5th Cir. 2009) ................................................................6

*United States v. Duckett,*
 406 F. App'x 185 (9th Cir. 2010) ..............................................................13

*United States v. Kokinda,*
 497 U.S. 720 (1990) .............................................................................15, 16

*United States v. Masciandaro,*
 638 F.3d 458 (4th Cir. 2011) ........................................................11, 14, 18

*United States v. Mendoza,*
 464 U.S. 154 (1984) ...................................................................................21

*United States v. Salerno,*
 481 U.S. 739 (1987) .............................................................................16, 17

*United States v. Torres-Rosario*,
   658 F.3d 110 (1st Cir. 2011).............................................................................20

*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010)..........................................................................12

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983)............................................................................21

## Constitution

U.S. Const. art. IV, § 3, cl. 2...................................................................................11

## Statutes

*Credit Card Accountability Responsibility and Disclosure Act of 2009*,
   Pub. L. No. 111-24, § 512(b), 123 Stat. 1737..............................................19

16 U.S.C. § 460d.........................................................................................................8

18 U.S.C. § 922(g)(1)................................................................................................12

18 U.S.C. § 922(g)(9)................................................................................................12

## Regulatory Materials

21 Fed. Reg. 5405 (July 19, 1956)..........................................................................10

26 Fed. Reg. 2123 (Feb. 13, 1964)..........................................................................10

36 C.F.R. § 2.4(a) (2008)..........................................................................................18

36 C.F.R. § 2.4(a)(3) (2008).....................................................................................19

36 C.F.R. § 2.4(b) (2008)..........................................................................................18

36 C.F.R. § 327.13 (2015)...........................................................................................5

**Other Materials**

U.S. Army Corps of Engineers, *Libby Recreation*,
http://www.nws.usace.army.mil/Missions/CivilWorks/
LocksandDams/LibbyDam/Recreation.aspx ................................................................................8

## INTRODUCTION

The United States Army Corps of Engineers (Army Corps) generally prohibits visitors to its property from carrying loaded firearms and ammunition. Relying almost exclusively on this Court's decision in *Peruta v. County of San Diego*, 742 F.3d 1144, 1168 (9th Cir. 2014), *vacated,* __ F.3d __, No. 10-56971 (9th Cir. Mar. 26, 2015), the district court held the Army Corps regulation unconstitutional on the ground that it destroyed plaintiffs' Second Amendment rights.

Plaintiffs' response brief tries in vain to defend this reasoning. As the Eleventh Circuit recently explained in a case involving the same provision: "The regulation . . . is cabined to a limited geographic area designed for recreation. Whatever else the regulation does, it does not destroy the plaintiffs' Second Amendment right to keep and bear arms altogether." *GeorgiaCarry.Org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1320 (11th Cir. 2015).

Claiming a right to possess a firearm for self-defense wherever they "happen[] to be," Pl. Br. 38 (internal quotation marks omitted), plaintiffs declare the fact that the Army Corps restriction applies only on government property irrelevant. Under plaintiffs' theory of the Second Amendment, their Second Amendment rights would be destroyed by prohibitions on firearms in Post Offices, schools, and nuclear power plants. No Court has accepted this extreme view of the right to self-defense and the courts of appeals have expressly rejected it. *GeorgiaCarry.Org*, 788 F.3d at 1326 ("The plaintiffs can freely exercise their right to bear arms for self-defense elsewhere,

whether in the home or on the streets, without running afoul of this regulation."); *see also Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012) ("In contrast, when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need."); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125-26 (10th Cir. 2015). And the Supreme Court in *District of Columbia v. Heller* expressly affirmed that its decision did not "cast doubt" on longstanding prohibitions on carrying firearms in sensitive places, like government buildings and schools. 554 U.S. 570, 626-27. This Court should therefore join the Eleventh Circuit in holding that the regulation at issue here does not "destroy" plaintiffs' Second Amendment rights.

Nor does the regulation otherwise contravene the Second Amendment. As explained in our opening brief, the Army Corps plays a vital role in constructing, maintaining, and protecting our nation's infrastructure and water resources. The Army Corps has opened up portions of its lands to the public for recreation where it can do so consistently with the public interest and national security. But recreation is not the primary purpose of Army Corps projects: the Army Corps administers particular property only because that property contains an important water resource or other critical infrastructure project. These projects are indisputably sensitive, and the Army Corps is not required to abandon all firearms restrictions when it opens up its land to recreation.

Assuming some form of means-end review applies to the Army Corps regulation, plaintiffs present no justification for the application of strict scrutiny to the regulation, and it easily passes muster under intermediate scrutiny. The regulation imposes only limited place restrictions on the carrying of firearms. Because the regulation has a "reasonable fit" with the government's "asserted objective" in preventing firearms violence and protecting Army Corps projects, this Court should uphold the regulation. *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013) (citing *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010)).

## ARGUMENT

## I.  The District Court's Reasoning Was Flawed, and The Judgment Permanently Enjoining the Corps Must Be Reversed.

Plaintiffs do not dispute that the district court's grant of injunctive relief was driven by a belief that the case was controlled by *Peruta v. County Of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *vacated by* ___ F.3d ___, No. 10-56971 (9th Cir. Mar. 26, 2015); *see, e.g.,* ER 11. As explained in our opening brief, even before it was vacated, *Peruta* had no bearing on this case, which involves not a sweeping county-wide ban, but a regulation of limited scope that restricts firearm possession only when people choose to avail themselves of recreational opportunities on sensitive government property. The district court's judgment should be reversed.

### A. The Army Corps Regulation Does Not "Destroy" Plaintiffs' Second Amendment Rights.

The district court incorrectly believed that this Court's decision in *Peruta* dictated a conclusion that the Army Corps regulation "destroyed" plaintiffs' Second Amendment rights such that the regulation failed under any level of scrutiny. But this demonstrates a fundamental misunderstanding of *Peruta*'s relationship to this case. As explained in our opening brief, in contrast to the ban on the carrying of firearms in public places at issue in *Peruta,* or the ban on possessing loaded handguns in the home at issue in *Heller*, the regulation here concerns only the carrying of firearms on specific government property and not the regulation of firearms generally. Consistent with state law, plaintiffs remain free to carry firearms in their homes and in public areas and may therefore maintain an "undiminished right of self-defense by not entering" Army Corps land. *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). The regulation thus does not destroy plaintiffs' Second Amendment rights.

As the Eleventh Circuit recently explained, in vacating a preliminary injunction against the Army Corps regulation at issue here, "*Peruta* and *Heller*—the cases the plaintiffs rely on in which the Second Amendment right was 'destroyed'—involved vastly broader firearms regulations than the restriction at issue here." *GeorgiaCarry.Org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1325 (11th Cir. 2015). That is because "[t]he Corps' firearms regulation . . . is narrowly cabined to a specific area, and in this case that area is specifically designated for recreation. The plaintiffs can freely exercise

their right to bear arms for self-defense elsewhere, whether in the home or on the streets, without running afoul of this regulation. . . . Other areas for camping and recreation are available to the plaintiffs where their Second Amendment rights would be undisturbed by 36 C.F.R. § 327.13, including national parks and Georgia state parks." *Id.* at 1326.[1]

Plaintiffs discount the limited geographic scope of the Army Corps regulation, contending that they must be able to assert their right to self-defense wherever they "happen[] to be," lest their Second Amendment rights as law-abiding citizens be destroyed. Pl. Br. 38. This argument is difficult to fathom. Because a hypothetical need for self-defense could arise in any number of such indisputably sensitive places that lack armed security guards, *see* Pl. Br. 21, plaintiffs' position would require that they be permitted to carry loaded firearms on airplanes, in schools, in mental health facilities, and in polling places. Indeed, plaintiffs' position would seem to extend to private property, as well. *See GeorgiaCarry.Org v. Georgia*, 687 F.3d 1244, 1260 (11th Cir. 2012) (rejecting Second Amendment challenge to Georgia law that prohibited loaded firearms in churches unless the property's owner granted permission). But this

---

[1] The National Rifle Association (NRA) makes the rather startling assertion in its amicus brief that the regulation at issue here is *more* offensive to the Second Amendment than the law initially invalidated in *Peruta*. NRA Amicus Br. 18. But this argument wholly discounts the limited geographic scope of the regulation and the fact that the regulation applies only to sensitive government property managed by the Army Corps. Plaintiffs are free to camp and hike on land not managed by the Army Corps if they wish to maintain their ability to defend themselves by caring a loaded firearm.

position cannot be squared with the Supreme Court's admonition in *Heller* that "the right secured by the Second Amendment is not unlimited" and that its decision did not "cast doubt" on prohibitions on firearms possession in "sensitive places, including schools and government buildings." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008).

> **B.    Restrictions on Firearms Possession While on Army Corps Property Do Not Burden Conduct Protected by the Second Amendment.**

1. Because the district court focused almost exclusively on this Court's now-vacated decision in *Peruta,* it failed to provide a detailed analysis of whether Army Corps land was the kind of "sensitive place" the Supreme Court identified in *Heller.* 554 U.S. at 626-27 & n.26; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (Alito, J., joined by Roberts, C.J., Scalia and Kennedy, JJ.). The district court simply declared, without elaboration, that outdoor spaces could not be "sensitive places" within the meaning of *Heller.* ER 9. Plaintiffs likewise repeat the claim that "sensitive places" must be "those with four walls and a roof." Pl. Br. 20.

As plaintiffs acknowledge, their position is directly contrary to decisions from the Fifth Circuit and Tenth Circuit recognizing that outdoor areas may constitute "sensitive places" within the meaning of *Heller.* Pl. Br. 20 n.14; *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125-26 (10th Cir. 2015) (holding that Postal Service parking lot was a "sensitive place"); *United States v. Dorosan*, 350 F. App'x 874, 875 (5th Cir. 2009) (unpublished) (upholding firearms prohibition on Postal Service parking lot); *see also*

*Nordyke v. King*, 563 F.3d 439, 460 (9th Cir. 2009) (open, public spaces "such as County-owned parks, recreational areas, historic sites, parking lots of public buildings . . . and the County fairgrounds" "fit comfortably within the same category as schools and government buildings") (omission in original), *vacated on reh'g en banc*, 611 F.3d 1015 (9th Cir. 2010). Moreover, plaintiffs' position finds no support in *Heller*, which nowhere suggested that the sensitive places the Court described were limited to indoor spaces.

As explained in our opening brief, Army Corps land is a "sensitive place" within the meaning of *Heller*. Armed visitors to Army Corps recreational facilities raise precisely the concerns raised by weapons in schools and government buildings. ER 37 (Decl. of Stephen B. Austin). And Army Corps land is not simply federal land set aside for recreation purposes: the Army Corps administers the federal land because it houses one or more public works projects crucial to our infrastructure and national security. *See* ER 39 ¶ 6a. The Army Corps is responsible for a staggering percentage of the country's water supply and hydropower capacity. *See* ER 37 ¶ 5b (Army Corps operates 702 dams, maintains 14,501 miles of levees, provides 24% of the nation's hydropower capacity and provides enough storage for drinking water to supply 96 million households). Protecting Army Corps projects and visitors to these projects is of obvious importance to both the Army Corps and the public, and these locations qualify as "sensitive places" within the meaning of *Heller*.

There is no reason to believe that Army Corps land cannot constitute a sensitive place because it lacks security screening or armed guards, as plaintiffs urge. Pl. Br. 21. The Supreme Court identified "schools and government buildings" as paradigmatic "sensitive places." *Heller*, 554 U.S. at 626. But most schools have no such screening or armed security guards; and many government buildings lack it as well. *See Bonidy,* 790 F.3d at 1127 (rejecting reliance on lack of armed security guard at Post Office). It similarly does not advance plaintiffs' claim to urge that Army Corps land is open to the public without restriction and therefore cannot be a sensitive place within the meaning of *Heller.* The Army Corps determines when and how to allow the public access to its land and only opens its land for recreation where it can do so consistent with the public interest. 16 U.S.C. § 460d (allowing the Secretary of the Army to determine that use of Army Corps land by the public is contrary to the public interest). Immediately following September 11, 2001, for example, the Corps closed all its facilities to visitors, some of which have never reopened. *See, e.g.,* U.S. Army Corps of Engineers, *Libby Recreation,* http://www.nws.usace.army.mil/Missions/CivilWorks/LocksandDams/LibbyDam/ Recreation.aspx (area above Libby Dam).

Nor does the presence of hunting on Army Corps property undermine the land's status as a sensitive place. Pl. Br. 23; *see also* NRA Amicus Br. 6. Plaintiffs do not seek to carry firearms in designated hunting areas, which are distinct from recreation areas, but rather challenge the Corps' ability to regulate firearms on other

portions of Corps' property. And as the Corps has explained, a prohibition on armed visitors outside designated hunting areas allows the Corps to quickly assess and diffuse threats to its sensitive projects because anyone carrying a loaded firearm outside a designated hunting area is in violation of the regulation and could be stopped on that basis. *See* ER 39 ¶ 6a ("Early detection of threats to [Corps-managed] infrastructure is aided by current Corps policy, and could be compromised by a too-permissive firearms regulation."). The presence of designated hunting areas does not therefore compromise the Army Corps' ability to detect threats posed by armed visitors.

Plaintiffs' reliance on the population density of Army Corps land in Idaho similarly fails to advance their claim. Pl. Br. 24. The overall density of persons per square foot reveals very little about the concentration of visitors in a given area of a recreation facility. Most visitors to Army Corps property congregate in campgrounds and at popular recreational sites, like beaches or access points to lakes, and most visitors, especially in Idaho, will visit the Army Corps property only seasonally. Even assuming visitors to Army Corps property in Idaho remain less concentrated in population than elsewhere in the country, such an observation provides no basis for discounting the sensitivities of the particular water resource or critical infrastructure project on the property, which may be threatened by a single armed visitor with ill intent.

2. Even setting aside the question of whether the Army Corps land here is a "sensitive place," it still falls within the presumptively lawful longstanding restrictions on firearm possession upon which *Heller* did not cast doubt. As an initial matter, the regulation at issue here is at least as long-standing as some of the restrictions referenced in *Heller*. 554 U.S. at 627 n.26. The regulation challenged in this case was promulgated in 1973, but, as explained in our opening brief, the Corps imposed a restriction on loaded firearms in its existing recreation sites in the 1940s. As the Army Corps acquired property and opened up more of its property for recreation, those lands became subject to the firearms restriction, as well. This includes recreation areas in Idaho. For example, the firearm restriction was first applied to Lucky Peak in 1956, *see* 21 Fed. Reg. 5405 (July 19, 1956), and Albeni Falls in 1964, *see* 26 Fed. Reg. 2123 (Feb. 13, 1964) (same, adding Albeni Falls as recreation area).

Moreover, as explained in our opening brief, the Army Corps regulation at issue here constitutes the permissible exercise of the Army Corps' authority to issue regulations governing the public's use of its property. *Cf. Adderley v. Florida*, 385 U.S. 39, 47 (1966) ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."). This Court and other courts of appeals have recognized that government enjoys greater flexibility to restrict the carrying of firearms when it is acting as a property owner. *Nordyke v. King*, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc) (citing *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 598 (2008)). For example, in rejecting a

Second Amendment challenge to a Postal Service policy that prohibited carrying firearms on Postal Service property, the Tenth Circuit explained that "[t]he government often has more flexibility to regulate when it is acting as a proprietor (such as when it manages a post office) than when it is acting as a sovereign (such as when it regulates private activity unconnected to a government service)." *Bonidy,* 790 F.3d at 1125-26; *see also United States v. Masciandaro,* 638 F.3d 458, 473 (4th Cir. 2011) ("The government, after all, is invested with 'plenary power' to protect the public from danger on federal lands under the Property Clause."(citing U.S. Const. art. IV, § 3, cl. 2)).

Recognizing the Army Corps' authority to regulate conduct on its property when acting in its proprietary capacity is not equivalent to a holding that all government property is a "Second-Amendment-free-zone[]." Pl. Br. 32. As explained in our opening brief, the government has broader authority to restrict firearms possession that it owns and controls in connection with water resource and critical infrastructure projects. The government has not contended that all outdoor federal land would necessarily fall outside the scope of the Second Amendment. The Army Corps has a unique mission and acquired the land it manages not as a means to provide recreational opportunities to the public, but in order to construct, operate, and maintain water resource and infrastructure projects.

3. The regulation at issue here does not, therefore, burden conduct falling within the ambit of the Second Amendment. Plaintiffs err in arguing that the

presumptively lawful regulations described in *Heller* may nonetheless be challenged on an as-applied basis. *See* Pl. Br. 48 (claiming that plaintiffs "[b]y definition" can "pose no public safety concerns"). Plaintiffs' reliance on *Chovan*, 735 F.3d at 1141, for this point is misplaced. Pl. Br. 26-27. Although this Court entertained an as-applied challenge in *Chovan*, that case involved a challenge to 18 U.S.C. § 922(g)(9), which was not referenced by *Heller* as a presumptively lawful regulation. *Chovan*, 735 F.3d at 1141; *See* Pl. Br. n.25.

Plaintiffs similarly err in relying on *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011) (cited at Pl. Br. 27). In *Barton*, the Third Circuit rejected an as-applied challenge to 18 U.S.C. § 922(g)(1), the federal ban on firearms possession by felons, because "under most circumstances, . . . felon dispossession statutes regulate conduct which is unprotected by the Second Amendment." *Id.* at 172-75. While the court did not foreclose the possibility that a hypothetical individual might "present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections," *id.* at 174, it did not hold that any such individual would automatically succeed in an as-applied challenge to section 922(g)(1).

In any event, even if *Barton* could be read to support an individualized analysis in some circumstances, it would be inconsistent with this Court's decision in *Vongxay*, which upheld the federal ban on firearms possession by felons, 18 U.S.C. § 922(g)(1). *United States v. Vongxay*, 594 F.3d 1111, 1117 (9th Cir. 2010). And would not support

the application of strict scrutiny, in any event. *See infra* p. 14-15. Plaintiffs urge that in *Vongxay* this Court did not hold that prohibitions on firearms possession by felons fell outside the scope of the Second Amendment. But this contention fails on a reading of the decision itself, which did not engage in means-end scrutiny, as would be required if the Court had concluded that the regulation affected conduct protected by the Second Amendment. Moreover, such a reading would be impossible to square with this Court's subsequent decision in *United States v. Duckett*, 406 F. App'x 185 (9th Cir. 2010) (unpublished), which held that a felon's *as-applied* challenge to section 922(g)(1) was foreclosed by *Vongxay*, thereby making plain that this Court in *Vongxay* held categorically that felons may be denied the ability to possess firearms without violating the Second Amendment.

## II. The Army Corps Regulation Does Not Run Afoul of the Second Amendment.

For the reasons explained below and in our opening brief, even assuming that the Army Corps regulation burdens conduct protected by the Second Amendment, it is subject to, at most, intermediate scrutiny. The regulation has a "reasonable fit" with the government's "asserted objective" in preventing firearms violence and protecting Army Corps projects. *Chovan*, 735 F.3d at 1139. The regulation thus passes constitutional muster.

## A.      Strict Scrutiny Does Not Apply.

Plaintiffs' contention that strict scrutiny applies ignores this Court's admonition that the level of scrutiny depends on "the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Chovan*, 735 F.3d at 1138. As explained in our opening brief and echoed by the Eleventh Circuit in *GeorgiaCarry.Org,* plaintiffs are free to carry their firearms, as permitted by state law, outside Army Corps property. And plaintiffs are in no sense required to use Corps recreational facilities. The nature of the conduct regulated here thus makes plain that strict scrutiny is unwarranted. *See also Masciandaro*, 638 F.3d at 473-74 (upholding similar National Park Service firearms regulation under intermediate scrutiny).

Moreover, as demonstrated above, *supra* p. 4-12, the land at issue in this case falls within the category of long-standing presumptively valid firearms restrictions described in *Heller*. 554 U.S. at 626-27 & n.26. By contending that strict scrutiny should apply, plaintiffs would make such laws not "presumptively valid," but rather presumptively unlawful.  *NRA v. ATF*, 700 F.3d 185, 205 (5th Cir. 2012); *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.,* 276 F.3d 876, 879 (6th Cir. 2002) (explaining that strict scrutiny begins with "presuming that the ordinance is unconstitutional"); *see also Prince v. Jacoby,* 303 F.3d 1074, 1091 (9th Cir. 2002) ("Discrimination against speech because of its message is presumed to be unconstitutional.") (quoting *Rosenberger v. Rectors & Visitors of the Univ. of Va.,* 515 U.S. 819, 828 (1995)).

It is likewise no answer to suggest that because the Supreme Court has characterized the Second Amendment as protecting a fundamental right, strict scrutiny must apply. As the Tenth Circuit recently explained, the Second Amendment right differs in a significant respect from other fundamental rights described by the Supreme Court: "[t]he risk inherent in firearms . . . distinguishes the Second Amendment right from other fundamental rights that have been held to be evaluated under a strict scrutiny test, such as the right to marry and the right to be free from viewpoint discrimination, which can be exercised without creating a direct risk to others." *Bonidy,* 790 F.3d at 1126. As the court observed, "[i]ntermediate scrutiny makes sense in the Second Amendment context." *Id.*

**B.** **The Army Corps Regulation Satisfies the Appropriate Level of Scrutiny.**

As explained in our opening brief, because the regulation at issue concerns the public's use of government property, this Court need only determine whether the Army Corps regulation is reasonable. *United States v. Kokinda*, 497 U.S. 720, 725-26 (1990). Plaintiffs note that the First Amendment, which was at issue in *Kokinda*, differs from the Second Amendment. But the relevant point is that constitutional analysis differs on government property, and "[t]he government often has more flexibility to

regulate when it is acting as a proprietor (such as when it manages a post office) than when it is acting as a sovereign." *See Bonidy,* 790 F.3d at 1126; *supra* p. 10-11.[2]

In any event, even assuming the more rigorous standard of intermediate scrutiny applies here, the regulation passes constitutional muster. This Court has on several occasions set forth the standard for intermediate scrutiny in the Second Amendment context; it requires a "reasonable fit" between the "challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139 (citing *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010)); *see also Fyock v. City of Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015).[3]

The Army Corps has an important—indeed, compelling—interest in promoting order and public safety on the land it manages, protecting its water-resource development projects, and protecting visitors from the risk of firearm violence. As the Supreme Court has repeatedly emphasized, "[t]he government's interest in preventing crime . . . is both legitimate and compelling." *United States v.*

_____

[2] Amicus GeorgiaCarry fails to advance the argument against reasonableness review by noting that the Army Corps regulation may be enforced through criminal penalties. GeorgiaCarry Amicus Br. 7. Even trespassers on private land may be subject to criminal penalties. But more importantly, this argument cannot be squared with the Supreme Court's decision in *Kokinda*, which considered a Postal Service regulation that also carried with it criminal penalties. *See* 497 U.S. at 724 ("Respondent Kokinda was fined $50 and sentenced to 10 days' imprisonment; respondent Pearl was fined $100 and received a 30–day suspended sentence under that provision.").

[3] The NRA suggests that there is little difference between intermediate and strict scrutiny, urging that both require "narrow tailoring." *See* NRA Amicus Br. 25-26. But this is directly contradictory to settled circuit precedent, which sets forth the standard for intermediate scrutiny in the Second Amendment context.

*Salerno*, 481 U.S. 739, 749 (1987).

And there is a reasonable fit between the safety and security issues the Army Corps faces and its chosen regulation.[4] The Corps manages a variety of projects crucial to our Nation's infrastructure and national security: navigational locks and dams, hydropower facilities, water supplies, navigation projects, and fish and wildlife projects. The Army Corps must thus consider a number of factors when deciding whether the public interest is furthered by opening Corps-managed lands for recreation, and what rules should govern this recreational use. ER 37 ¶ 5a. The Army Corps must take into consideration both the need to protect critical infrastructure projects and the safety of recreational visitors. And the Army Corps must do so with park rangers who lack express authority to perform many typical law-enforcement functions, such as carrying firearms, making arrests, or executing search warrants. As the Army Corps explained in the record below, a permissive firearms policy might very well delay detection of threats to its projects. ER 39 ¶ 6a ("With an overly permissive regulation, Corps officials or other law enforcement officers could be in a position where they would not be able to intervene or ascertain any bad intent until a person with a firearm actually uses it."). A permissive firearms policy could also create a chilling effect on the enforcement of Corps regulations, as park rangers might be required to confront armed visitors in violation of facility policies. ER 38 ¶ 5e. The

---

[4] Because at most intermediate scrutiny applies, plaintiffs' discussion of less restrictive alternatives is misplaced. Pl. Br. 46-49.

Army Corps has thus reasonably determined to restrict visitors from carrying loaded firearms while on Army Corps property and outside designated hunting areas.[5]

Indeed, in the most relevant court of appeals case evaluating a similar regulation under intermediate scrutiny, the Fourth Circuit found a reasonable fit between the National Park Service's prohibition on loaded firearms in vehicles and the government's interest in protecting public safety. *See Masciandaro*, 638 F.3d at 459-60.

Amicus NRA's attempts to downplay the significance of the *Masciandaro* decision are based on a misunderstanding of the regulatory scheme at the time. NRA Amicus Br. 10; *see also* Pl. Br. 38. At the time of Masciandaro's arrest, the relevant regulation read: "[c]arrying or possessing a loaded weapon in a motor vehicle . . . is prohibited, except that carrying or possessing a loaded weapon in a vessel is allowed when such vessel is not being propelled by machinery and is used as a shooting platform in accordance with Federal and State law." 36 C.F.R. § 2.4(b) (2008) (amended Jan. 2009). The NRA is correct that *the particular subsection* bans only loaded weapons in vehicles. But the NRA ignores the fact that the carrying of weapons was generally prohibited on all National Park Service land if not in designated hunting and fishing areas or inside a home. *Id.* § 2.4(a) (2008) (prohibiting "[c]arrying a weapon,

---

[5] Because the Corps has demonstrated that its regulation satisfies intermediate scrutiny, the plaintiffs' argument at pages 51 to 54 of their brief is misplaced. In any event, if this Court determines that the record is inadequate to permit evaluation of

trap, or net"). Thus, just as here, National Parks Service visitors could not carry loaded weapons in the park. Although plaintiffs are correct that visitors to national parks could keep unloaded firearms and ammunition in their vehicles, those firearms were still required to be rendered "temporarily inoperable." *Id.* § 2.4(a)(3). Thus, the issue decided in *Masciandaro* is on all fours with the issue in this case.

The NRA also erroneously asserts that Congress' decision to require the National Parks Service to allow loaded firearms on its property consistent with State law undermines the government's position. *See* Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, § 512(b), 123 Stat. 1734, 1765. Yet congressional action directed toward the National Park Service, but not the Army Corps, only underscores the different considerations the Army Corps must take into account when managing water resource or infrastructure projects. Congress could just as easily have barred the Army Corps from restricting the carrying of loaded firearms on its property, but it has not done so. And Congress may, of course, enact laws that allow individuals to carry firearms on government property even though such laws are not required by the Second Amendment.

Plaintiffs fare no better when they contend that because they bring an as-applied challenge this Court may only find for the government if it evaluates the particular safety concerns posed by the individual plaintiffs. Intermediate scrutiny

---

the application of intermediate scrutiny, this Court should vacate the district court's judgment and allow the government to develop the record further in the district court.

requires a "reasonable fit"—it does not require a perfect fit, and it does not require a court to open up exceptions on a case-by-case basis. *See Chovan*, 735 F.3d at 1142; *see also United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("[S]uch an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning."). Recognizing these settled principles, the Tenth Circuit recently rejected a similar invitation to evaluate each U.S. Postal Service customer or Post Office on a case-by-case basis, and this Court should decline to do so with respect to Army Corps' lands, as well. *Bonidy*, 790 F.3d at 1127 ("[T]he [Postal Service] is not required to tailor its safety regulations to the unique circumstances of each customer.").

### C. Plaintiffs' Argument That They Wish To Possess Firearms in Their Tents Does Not Advance Their Claim.

At several points in their brief, plaintiffs suggest that it is significant for the constitutional analysis in this case that they wish to possess firearms in their tents while camping. Pl. Br. 16-17; 34. The relevance of this point is unclear. Plaintiffs may be arguing that even if the Second Amendment does not apply outside the home, it should apply to temporary dwellings. *See* Pl. Br. 16 (relying on Fourth Amendment cases involving temporary dwellings). But plaintiffs' wish to have firearms inside their tents is no response to the government's arguments regarding the nature of Corps campgrounds as sensitive government property.

Plaintiffs' assertion that the government has "waived" the argument that the restriction is constitutional as applied inside tents does not withstand even cursory scrutiny. Pl. Br. 34-35. First, as explained above, the government's arguments in support of the regulation do not hinge on whether plaintiffs are inside or outside a tent. Second, the appeal in this case is from the final judgment entering a permanent injunction. *See* Notice of Appeal, ER 1-2 (appealing from permanent injunction decision). The decision granting plaintiffs a permanent injunction makes no mention of temporary dwellings in its analysis and did not hold that the regulation was unconstitutional specifically as to tents. The government's opening brief quite properly addressed the bases for the district court's decision on appeal.

## D. The District Court's Injunction Is Too Broad.

As a final matter, as explained in our opening brief, because this was not a class action, the district court's injunction should have been limited to the individual plaintiffs named in the complaint. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("On remand, the injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs."); *see also Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996). Plaintiffs respond by arguing that if they prevail here, the scope of the injunction does not matter, because the government would lose any future case on either *stare decisis* or collateral estoppel grounds. Pl. Br. 55. But this is incorrect. As an initial matter, non-mutual collateral estoppel does not apply against the government. *United States v. Mendoza*, 464 U.S. 154, 158 (1984). The government

remains free to litigate any future Second Amendment challenges to the Army Corps regulation. Moreover, plaintiffs' *stare decisis* argument only applies if this Court accepts plaintiffs' "swing for the fences" argument that no amount of evidence could support the Army Corps regulation at issue in this case. *See GeorgiaCarry.Org*, 788 F.3d at 1325. As explained above, *see supra* p. 4-6, this Court should join the Eleventh Circuit in rejecting that argument.

## CONCLUSION

For the foregoing reasons, and those stated in our opening brief, the judgment of the district court should be reversed.

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

WENDY J. OLSON
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
  s/ *ABBY C. WRIGHT*
ABBY C. WRIGHT
  (202) 514-0664
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

AUGUST 2015

## STATEMENT OF RELATED CASES

Counsel for appellants are not aware of any related cases as defined in Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,233 words excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/*Abby C. Wright*
ABBY C. WRIGHT
Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

The plaintiffs in this case are registered CM/ECF users.

s/*Abby C. Wright*
ABBY C. WRIGHT
Counsel for Appellants